BRANCH *against* DOANE.

Where *A*, under a licence from *B*, the owner of land through which a watercourse flowed, erected a mill thereon, and ever afterwards *A* used and occupied such mill as if it were his own; but it did not appear that there was any consideration for the licence, or that it was to continue for any definite period, or that there was any agreement as to the nature of the occupation, or any stipulations whatever, by which the parties were mutually bound to each other; in an action brought by *A* against *C*, the owner of a mill below, for setting the water back upon *A's* mill, by means of a dam erected by *C*; it was held, that such licence did not amount to a lease from *B* to *A*, nor create any privity of contract or estate between them; consequently, *B* was not an incompetent witness for *A*.

It appearing in such action, that during a part of the time embraced by the injury complained of, *D* tended *A's* mill, receiving a share of the tolls; and the question was, whether *D*, during this period, occupied as tenant of *A*, or jointly with him, or as his servant; the circumstances regarding such occupation being detailed by the witness, the court submitted them to the jury, to be weighed by them, in connexion with the credit due to the witness, and

thence to determine the question in controversy; it was held, that this course was correct.

*Qu.* Whether a master, in an action brought by his servant, in which the former has not assumed, and is not bound to assume, the prosecution of the suit, and is not interested in any damages which may be recovered, and where there can be no liability over by the former, if the latter should fail to recover, is an incompetent witness for the servant.

If the cause of action is divisible, and the plaintiff cannot sue alone for a part, and this does not appear on the face of his writ or declaration, the defendant may successfully plead in abatement to such part, and the action will proceed as to the residue.

Where the declaration alleged an injury to the plaintiff's mill, by the wrongful acts of the defendant, during a period of six years, and, on the trial, on the general issue, it appeared, that during a part of that period, the plaintiff occupied the mill jointly with another person; it was held, that the plaintiff was *not precluded from recovering damages for the injury which accrued during such joint occupation.*

Where it appeared in an action for the obstruction of a water-course, by the erection of a dam below the plaintiff's mill, that such dam was erected by the defendant himself; it was held, that a request to the defendant to remove the obstruction, was not necessary to entitle the plaintiff to a recovery.

Where one ground of defence to such action, was, a right in the defendant, acquired by prescription, to raise the water, in the manner and to the height alleged; it was held, that the time while his dam was in the course of being erected, and before it was so far completed as to permanently raise the water and set it back upon the plaintiff's premises, was not to be included in the duration of the use from which the prescriptive right was claimed.

Where complete justice has been done by the verdict, and the party against whom it was given has sustained no injury by the course taken on the trial, it will not be set aside for a misdirection.

*Windham,*
*July, 1845.*

Branch
*v.*
Doane.

THIS was an action on the case for the obstruction of a water-course.

The plaintiff, in the first count of her declaration, averred, That she then was, and for more than six years last past had been, the owner and possessor of a valuable grist-mill, situated on the *Pachaug* river in the town of *Voluntown*, at a short distance above the cotton-mill owned and occupied by the defendant; that during all said time, the plaintiff has been, and now is, lawfully entitled to the free and unobstructed flow of said stream, in its natural course, to carry her mill, and ever has been, and now is, wholly dependent on the same for a water power to carry said mill, and to enable her to use and operate it to any advantage; that the defendant wrongfully intending to injure the plaintiff, to destroy her mill and to deprive her of all use thereof or benefit therefrom, on or about the 1st day of *June*, 1837, wrongfully built and erected on

HARVARD LAW LIBRARY

and across said river, at a short distance below the plaintiff's mill, a high dam, by means of which the defendant obstructed the flowing of the water in said river, and caused it to set back against the wheel of the plaintiff's mill, so as to injure said mill, and prevent the plaintiff from grinding grain therein; that the defendant has wrongfully kept up and continued said dam from said 1st day of *June*, 1837, to the present time, and now keeps up and continues the same; that during all said time from said 1st day of *June*, 1837, to the present time, the defendant has, by means of said dam, obstructed the water of said river, and caused the same to set back against said wheel, and has, by so doing, greatly injured said mill and the machinery attached thereto, and has prevented the plaintiff from using said mill for the purposes for which it was erected; and, by reason thereof, said mill and machinery have been and are reduced in value, and she has lost the use of the same, and been deprived of all gain and advantage from said mill, which, but for the aforesaid wrong doings of the defendant, she would have made and realized.

There was another count for *continuing* the dam merely. The action was commenced in *June*, 1843.

The cause was tried, on the general issue, at *Brooklyn*, *October* term, 1844, before *Hinman*, J.

On such trial, it appeared, that the plaintiff did not own the premises on which her mill was erected; but she gave evidence to prove, that she erected it on the premises, by the licence of her brother, *Jonathan Branch*, the owner thereof; that the mill was operated by means of the water of the *Pachaug* river, flowing through the premises; and that ever since she erected the mill, she had occupied it, in the same manner as if she was the owner thereof. The defendant claiming a right, by means of his dam, to set back the water on the premises, and having offered evidence to establish such right, the plaintiff offered the testimony of *Jonathan Branch* to disprove it; to which the defendant objected, on the ground that the witness was interested as owner of the premises, and on the ground of the privity of interest between him and the plaintiff. The court overruled the objection, and received the testimony of this witness.

The plaintiff having offered evidence to prove, that the defendant, at different times, in each of the six years next pre-

vious to the commencement of this suit, had, by means of his dam, caused the water of the river to set back upon and obstruct her mill; and it appearing, that during three of said six years, one *Dyer Smith* tended the mill; and he, being a witness in the cause, testified, among other things, that he run the mill at the halves, and was in possession; that the plaintiff leased him the mill-house, at 25 dollars a year; that she was to keep the mill in repair, and to have one-half of the tolls, and he the other half; that she had nothing to do with the mill but to keep it in repair, and receive her half of the tolls; that she had the privilege of storing the grain that she bought there, and of coming into the mill, at any time; and that the witness bought grain for her. On a reëxamination of this witness, he testified, that he hired and paid rent for the mill-house, at the rate of 25 dollars a year; that the mill was separate from the house; that he was to have one-half of the tolls for tending the mill; that the plaintiff had the management of it; and when it got out of repair, she fixed it; and that, if he did small jobs about it for her, she paid him therefor; that by her direction, he requested the defendant to take the flash-boards off his dam. On the same reëxamination, he stated, that he did not intend to vary the testimony which he had before given on the subject. There was no testimony contradicting or explaining this evidence; and thereupon the defendant claimed, that the court should charge the jury not to include in the estimate of damages the time during which *Smith* so occupied the mill; and that if any damage was done to the mill, during that time, *Smith* alone was entitled to the compensation. He also claimed, that if *Smith* and the plaintiff were jointly entitled to the damages, yet under the circumstances above stated, the plaintiff could not recover for them in this suit; she, at the same time, claiming to recover for the time when *Smith* was not so in possession.

On this subject, the court charged the jury, that the right of the plaintiff to recover, during the three years in question, depended on the fact whether *Smith* was the tenant of the mill, and had the sole right to its possession; that if such was the fact, the plaintiff could recover nothing for this time; but if *Smith* was the hired servant of the plaintiff, although he had half the tolls for his services in tending the mill, that would not give him the possession; that the question depended upon

the intention of the parties—*i. e.*—whether the possession of the mill was intended to be surrendered to *Smith ;* that if the jury should find from this evidence, that such was the intention, the plaintiff could not recover.    The court also instructed the jury, that they would be justified from this evidence in finding a cotenancy, during this time, in *Smith* and the plaintiff, if they believed such to have been the intention of the parties ; and that if they should so find, and should also find that the defendant had, during this time, caused the injury complained of, the plaintiff was entitled to recover therefor, in this action, one half of the amount of such injury.

The plaintiff offered evidence to prove, that at the time of the erection of her mill upon the premises, the dam of the defendant, which had previously been erected, caused the water of the river to set back upon the premises, and had ever since caused the obstruction complained of to her mill, and to the same extent that her mill is now obstructed thereby ; and there was no evidence proving that *Jonathan Branch* had, at any time, notified the defendant to reduce the height of his dam, or made any claim that he should cease to set back the water upon the premises.    The defendant thereupon claimed, that the court should instruct the jury, that the plaintiff, under these circumstances, could not recover.    The court did not so charge the jury ; but charged them, that if they should find, that the plaintiff erected her mill by the licence and permission of her brother, and then had, and ever since has had, his licence to use all the fall of water that he has there ; and that the defendant has no right to keep his dam in the condition it is in ; and that, in consequence thereof, the plaintiff has suffered the injury of which she complains ; she is entitled to recover therefor.

It was admitted by the parties, that some time in the year 1828, the stone dam of the defendant, mentioned in the declaration, was erected and completed upon his land ; and that after it was so completed, it had ever since been kept up to as great a height as when it was so erected ; that this dam was erected a few rods above an old dam, called the *Cook* dam, which from time immemorial, had been maintained upon the defendant's land, by him and his grantors.    The defendant thereupon offered evidence conducing to prove, and claimed that he had proved, that though the stone dam was

*Windham*,
July, 1845.

Branch
*v.*
Doane.

built somewhat higher than the *Cook* dam; yet that in the ordinary state of water in the river, the water would not be, by means of such stone dam, set back upon the premises of the plaintiff; and that when the water of the river was, by means of freshets or otherwise, increased beyond the ordinary state of the river, still, by means of an increased length of rolling-way in the dam, the water of the river was enabled to, and did in fact, escape and pass over the dam, so as not to set back upon the premises, or cause any injury thereto, more than was done by the *Cook* dam; and if so, the defendant was not liable in this action; and the defendant claimed, that the jury should be so instructed by the court. The plaintiff did not claim to recover, unless the stone dam set back the water further than the *Cook* dam; and so the court instructed the jury.

The defendant also claimed, that if the jury should find, that the stone dam did raise the water, and cause it to set back upon the premises, to a greater extent than it was raised and set back by the *Cook* dam; yet that the defendant had right so to do; and for the purpose of establishing such right, he offered evidence conducing to prove, and claimed that he had proved, that in the early part of the month of *June*, 1828, he commenced the erection of the *Easterly* part of the stone dam; and to enable him to build it, he erected and placed a temporary dam across the river of a greater heighth than the stone dam, thereby turning the water of the river over its *West* bank, and raising it to a greater heighth than it was raised by the stone dam, when completed; that sometime in the month of *July*, or *August*, the *Eastern* part of the stone dam having been completed, the *Eastern* part of the temporary dam was so removed as to cause the water of the river to fall over the *Easterly* part of the stone dam; which it continued to do, until the stone dam was completed, and until the commencement of the plaintiff's action; and the defendant prayed the court to instruct the jury, that if they should find these facts proved, the defendant had acquired a right so to maintain his dam. The plaintiff having introduced witnesses to prove, that after the *Eastern* part of said dam was completed, and whilst the *Western* part of it was being built, the water of the river was discharged, by an aperture of about three feet square in the dam, without ordinarily flowing over,

HARVARD LAW LIBRARY

*Windham,*
*July, 1845.*

Branch
*v.*
Doane.

or being raised to the heighth of, the *Eastern* part of the dam, and so that the workmen engaged in the building of the *Western* part should not be interrupted thereby; the defendant claimed, that though the jury should find, that whilst the *Western* part of the dam was being built, the defendant had, for his own convenience, discharged the water through an aperture in the dam, the better to enable him to accomplish the work, he having, as soon as the dam was completed, and at all times thereafter, caused the water to be set back, by said dam; they would, from these facts, be authorized to find a grant to the defendant so to keep and maintain said dam; and the defendant prayed the court so to instruct the jury. The court did not instruct the jury as claimed by the defendant, but instructed them as follows: "If the temporary dam was kept up at first, and the stone dam afterwards, so as to cause an obstruction to the water for fifteen years, the defendant has acquired a right, and your verdict must be for him. In this, I assume, that the temporary dam was as great an obstruction, and raised the water as high, as the stone dam. If it did not, the defendant cannot tack on the time so as to make out the fifteen years. If you find, that there were two temporary dams; that the first raised the water as high as the stone dam, and the second not so high, and that these were kept up for the temporary purpose of enabling the defendant to build the stone dam, and the second dam turned the water through the aperture at the *East* end of the stone dam, or the defendant had it otherwise flow off so as not to raise the water so high as the stone dam; and that this was continued intentionally, by the defendant, till he completed the stone dam; you will be justified in finding such an interruption in the defendant's enjoyment as will prevent him from connecting the time together so as to give him any right."

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial.

*Strong* and *Foster*, in support of the motion, contended, 1. That *Jonathan Branch* was an incompetent witness for the plaintiff; being the owner of the land on which the plaintiff's mill stood. The effect of his testimony would be to prevent the water of the river from being set back upon his own land. He had even a greater interest than the present plain-

tiff. She having erected her mill on his land, by his licence merely, he, as soon as he had procured the reduction of the defendant's dam, might turn her out of possession of the premises, and enjoy them himself. It is his own property, that he makes valuable, by his own testimony. *Benedict* v. *Benedict,* 5 *Day,* 464. *Prince* v. *Case,* 10 *Conn. R.* 375. The relation of landlord and tenant, lessor and lessee, subsisted between the plaintiff and her witness ; and between them there was a *privity in estate. Co. Litt.* 271. *a. Comyn on Land. & Ten.* 257. In another suit, which may be brought by *Jonathan Branch* against the defendant, this verdict and judgment will be admissible in evidence, and conclusive, as against the defendant, of the right to maintain the dam as it now is. Verdicts, judgments, &c. have the same effect between privies as between parties. 1 *Stark. Ev.* 192, 3. The principles recognized in *Adams* v. *Butts,* 9 *Conn. R.* 79., exclude *J. Branch* as a witness in this case. The plaintiff is a mere tenant at will, and would be, if she were in possession under a contract to purchase. *Township No.* 6. v. *McFarland,* 12 *Mass. R.* 325.

2. That the testimony of *Dyer Smith* made him a tenant, and gave him the exclusive possession for three years. What was the effect of his testimony, if believed, was a question of law ; and the jury should have been instructed, that it gave him the exclusive possession, and would prevent any recovery by the plaintiff, during the same period. *Rich* v. *Penfield,* 1 *Wend.* 380., 386.

3. That the plaintiff was a tenant in common, during part of the time for which she claims, and sole tenant for the rest of the time. She cannot, in this action, recover for both. Describing herself as being in the exclusive possession, she cannot recover for the time she was so in possession, and also for a period when another was jointly in possession with her.

4. That the instruction to the jury that the plaintiff could recover without a previous request to the defendant, made by *J. Branch* or by his authority, was, under the circumstances proved, erroneous. *Johnson* v. *Lewis,* 13 *Conn. R.* 303.

5. That the jury should have been instructed, that the manner of maintaining the dam by the defendant, constituted a defence to the plaintiff's claim, and was evidence of a grant to erect and maintain it. The charge assumes that the user

HAYWARD LAW LIBRARY

*Windham,*
*July, 1845.*

Branch
*v.*
Doane.

must, under all circumstances, be *continuous.* The law is not so. The true principle is, that there must be such an user and enjoyment as there would be, if there had been a grant at the commencement. There may be an occasional discontinuance of the enjoyment, for the party's own convenience. This would not be such an interruption as would affect the presumption of a grant. If the party conducts just as he would, if he had a deed in his pocket, it is sufficient to raise the presumption of a grant. In this case, there was a perfect *unity of purpose* in all that the defendant did.

*Welch* and *Backus,* contra, contended, 1. That the testimony of *Jonathan Branch* was properly admitted; he having no such interest as would exclude him. 1 *Stark. Ev.* 743. 745. 747. (ed. 1808.)    *Greenl. Ev.* 432. 452.

2. That the objection growing out of the testimony of *Dyer Smith,* was unfounded. The jury were warranted, in view of the whole testimony, in finding him to be merely the *hired servant* of the plaintiff.

3. That the charge on this part of the case, was correct. If *Smith* was a tenant in common with the plaintiff, still she might sue alone. 1 *Chitt. Plead.* 53. *Sumner* v. *Tileston,* 7 *Pick.* 198. 204. *Haywood* v. *Davies,* 1 *Salk.* 4.

4. That the present plaintiff can sustain her action, though her mill stood upon the land of another, and though no notice had ever been given to the defendant to reduce his dam. Here the dam was built, *by the defendant himself;* and the case stands entirely on different grounds from that of one who has purchased a dam erected *by another,* as in *Johnson* v. *Lewis,* 13 *Conn. R.* 303.

5. That in order to raise a presumption of a grant from occupation, it must be, not only adverse, but *uninterrupted.* *Sargent* v. *Ballard,* 9 *Pick.* 251. 254.    3 *Kent's Com.* 444.

STORRS, J. The first question in this case, is, whether *Jonathan Branch* was a competent witness for the plaintiff.

The defendant concedes, that he was not interested in the event of the suit, not being entitled to any portion of the damages which might be recovered, nor liable to the plaintiff, if she failed to recover. But he claims, that the witness was

interested in the record, as an instrument of evidence in his favour, if the plaintiff succeeded.

*Windham*,
July, 1845.

Branch
*v.*
Doane.

Nothing appears in the motion as to the interest or estate of the plaintiff in the premises to which the injury is alleged to have been committed, excepting that, the witness being the owner thereof, the plaintiff erected the mill thereon, by his licence and permission, and ever since the erection of it, used and occupied it, in the same manner as if she was the owner thereof. It is insisted by the defendant, that such licence, in connexion with such use and occupation, conferred on the plaintiff a leasehold estate at will, and created the relation of landlord and tenant between them ; and therefore, that there was such a privity of interest that the rule of evidence founded on such privity, is applicable to this case.

There is no doubt that any words which are sufficient to denote the intention of the parties that one shall divest himself of the possession of land, and the other come into it, are enough to constitute, and will in legal construction amount to, a lease, as effectually as if the most apt and pertinent words had been used for that purpose, provided the transaction does not want, in any other respect, the constituents necessary to make a lease ; and it is immaterial whether the words are in the form of a licence, covenant or agreement. *Bac. Abr. tit.* Leases, &c. K. *Evans* v. *Thomas, Cro. Jac.* 172. *Hall* v. *Seabright*, 1 *Mod.* 14. Thus, if one "licence" another to enjoy such a house or land from such a time to such a time, it is a lease. *Bac. Abr. ubi supra.* So if one "licence" another to inhabit, or to come upon his dock and carry on his trade, it amounts to a lease. *Right* d. *Green* v. *Proctor*, 4 *Burr.* 2209. *Anon.* 11 *Mod.* 42. But such language does not necessarily, and independent of any thing more to show that there was a contract between the parties, constitute a lease. A lease is more than a mere licence ; it is a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other ; or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense. 4 *Cruise's Dig.* 67. *Jackson* d. *Webber* & al. v. *Harsen* & al. 7 *Cow. R.* 326. 3 *Blk. Com.* 317. If, therefore, the words, whatever they may be, which confer authority to another to take possession of land, are not accompanied with

*Windham,*
July, 1845.

Branch
*v.*
Doane.

language or stipulations which evince such a contract between the parties, they would amount to a mere licence, which would indeed be a sufficient excuse on a charge of trespass by the owner, but would not amount to a lease, nor convey an estate or interest in the land. From the statement in the motion in this case, it is certainly the just inference, that the plaintiff was in possession merely by the licence and permission of the witness, without any agreement for compensation express or implied, and not by virtue of any arrangement or understanding which would constitute a contract between them. It does not appear, that there was any consideration for the licence given to the witness ; or that it was to continue for any definite period : or that there was any agreement as to the nature of the occupation ; or in short, that there were any stipulations, by which the parties were mutually bound to each other, or which either of them could enforce against the other. Nothing is disclosed to show that the plaintiff did not go into the possession and occupy under a mere naked licence from the witness, which clearly would not constitute a lease or a contract of any other description. If the licence was connected with any terms or stipulations, which would amount to a lease of the premises to the plaintiff, and confer upon her an interest or estate therein, it would certainly be most natural to state expressly, that she was in possession under a lease, and not merely that she occupied and used it by the licence and permission of the witness, which is by no means equivalent, or else to give the terms of the contract or understanding between them, so that the court could certainly determine whether the plaintiff derived any estate or interest in the premises from the witness, and therefore, whether there was what the law deems a *privity* between them. But it is sufficient to say, that if it is important that such an interest or estate should exist in the plaintiff, in order to raise an objection to the competency of the witness on that ground, it should be made to appear on the motion. Every person being offered as a witness being presumed to be competent until the contrary appears, it was incumbent on the defendant to show the facts requisite to exclude the witness offered in this case. Whether under the circumstances, a foundation would be laid for the interposition of a court of equity in behalf of the plaintiff against the owner, or how far the latter could avail him-

self of the benefit of what has been done by the plaintiff under the licence, the facts disclosed in the motion do not enable us to determine, nor is it here necessary to inquire.   In this view of the case, there was no such relation existing between the plaintiff and the witness as created any privity of contract or estate between them.   The witness was not bound to defend the plaintiff in the possession of the premises, nor to vindicate any of his alleged rights founded on such possession ; nor could he be called upon to aid the plaintiff; nor would he have any right to interfere, in any manner, in this suit. Therefore, on the ground of *privity*, the witness was not incompetent.

The relation of the plaintiff to the witness would, at the utmost, be that of a mere servant, although it is difficult to perceive how even such a relation would be created by a mere licence, at least any further than to affect the owner by acts authorized by such licence, as having been done by his permission and authority, and in law consequentially by himself.  Viewed in this the most favourable light for the defendant, the question would be, whether a master, in an action brought by his servant, in which the former has not assumed, and is not bound to assume, the prosecution of the suit, and is not interested in any damages which may be recovered, and where there can be no liability over by the former, if the latter should fail to recover, is a competent witness for the servant. The answer must depend on whether the record in the suit could be used as evidence, in another suit, by the master in his favour, or by the defendant against him.   The only case, which gives any semblance to the claim that such record would be admissible in a subsequent suit to which the master is a party, is *Kinnersly* v. *Orpe*, 2 *Doug.* 517., where, in an action for trespass in the plaintiff's fishery, a verdict for the plaintiff in a former action against one who had justified as the servant of one *Cotton*, although held not to be conclusive, was admitted as evidence against the defendant, upon its appearing that the defendant had also acted by the command of said *Cotton*.   The authority of this case has been much questioned.   Mr. *Phillipps*, in his treatise on *Evidence*, says, that it is not easy to reconcile it with the general rules of evidence.   The correctness of the decision is strongly doubted, by Lord *Ellenborough*, in *Outram* v. *Morewood*, 3 *East*,

*Windham,*
July, 1845.

Branch
*v.*
Doane.

*Windham,*
*July, 1845.*

Branch
*v.*
Doane.

346; and *Spencer,* J., in *Case* v. *Reeve,* 14 *Johns. R.* 82., concurs in that doubt, and says, that it is reconcileable with the rules of evidence on the ground only that both suits were substantially against *Cotton* himself, inasmuch as the acts of trespass were committed by his express direction, for the very purpose of trying the right to the fishery, and that though there were nominally different defendants, he defended both suits, and was substantially the real defendant; and the decision is placed on that ground. by Mr. *Starkie,* in his treatise on *Evidence, vol.* 1. *p.* 260. (3d *Lond.* ed.) But whatever may be thought of the correctness of that decision, it has no bearing on the question before us, since there was no such relation between the plaintiff and the witness, in the present case, growing out of any actual or legal connexion between them, that the witness can be deemed to be a party in any sense to the action. The question would be a more difficult one, if, by virtue of the relation of landlord and tenant between the plaintiff and the witness, there had been a legal privity between them; but it is unnecessary to determine how it would have stood in that case, as no such relation is shown to have existed.

With respect to the testimony of *Smith,* we think that the court below properly left it to the jury to determine whether it proved, that, during the three years when he tended the mill, he occupied as tenant of the plaintiff, or jointly with her, or as her servant. It does not appear for which of the parties he was called as a witness; nor at the instance of which party his testimony, as detailed, was given; nor whether it was elicited on his direct or cross examination, or both. We are aware of no principle, which required the court, as matter of law, on the circumstances stated by him, to determine as to the character in which he occupied the mill. Those circumstances were only evidential of the character of his occupation, and were therefore proper to be submitted, not to the court, but to the jury, for them to weigh them, in connexion with the credit due to the witness, and to determine the main fact in controversy between the parties, to which that testimony applied, in regard to the character of such occupation.

The defendant claims, that the jury should have been instructed, that if they found that, during a part only of the time when the land was overflowed by the defendant, the plaintiff

was in possession jointly with *Smith,* the plaintiff could not recover for any of the damages sustained during that period. If, during the whole time for which the plaintiff claimed to recover, he owned the land jointly with another person, it is well settled, that the defendant could not take advantage of the fact of such ownership to defeat the suit, except by plea in abatement for the non-joinder of such other joint owner as plaintiff; and that he could otherwise avail himself of it only in the apportionment of damages on the trial.   This is conceded by the defendant; but he claims, that as the time covered by the declaration embraced a period when the plaintiff owned jointly with another, and also a period when she was sole owner, it was not competent for the defendant to plead in abatement the non-joinder of the other joint owner ; and therefore, as the plaintiff claimed to recover damages during both of these periods, the only mode by which advantage could be taken of such non-joinder, was, by an objection to the evidence of damages during the time of such joint ownership, or to the recovery of any damages for that period.   It is claimed to be the only mode in which the defendant could enforce the right of having the action brought by all the joint owners.

On the question whether, as to that portion of the time embraced in the declaration, when the plaintiff was a joint owner with *Smith,* a plea in abatement could have been properly interposed by the defendant, and the writ abated as to the cause of action relating to that time, for the non-joinder of *Smith,* we have been referred to no authorities.   According to the general rules which prevail as to pleas in abatement, there appears to be no substantial objection to a plea of that description as to that portion of the time ; nor are we aware of any technical difficulty which prevents it ; and it would be manifestly unjust to allow a plaintiff, by uniting in his declaration causes of action in favour not only of himself alone, but also of himself and another person, to prevent the defendant from availing himself, by the only appropriate plea, of the objection that the latter was not made a party plaintiff, in the same manner, and to the same extent, as he might have done, if the suit were only for a single cause of action in which both were jointly interested.   It is a well established principle in pleading, that when a cause of action is divisible, the writ

*Windham,*
July, 1845.

Branch
*v.*
Doane.

is divisible, and may be abated in part, and remain good for the residue ; and therefore, the defendant may plead in abatement to part, and demur or plead in bar to the residue of the writ.   2 *Saund. Rep. by Williams,* 210. *a. note* 1.   1 *Chitt. Pl.* 458. (8th *Am.* edition.)   This is laid down as a general principle, although the mode of applying it is different, according as it does, or does not, appear by the plaintiff's own showing on the face of his writ or declaration, that as to a part of the cause of action the writ is abateable.   In *Godfrey's* case, 11 *Rep.* 45. *b.* it was resolved, that if the plaintiff, in his action, brought either upon a general writ, such as debt, account, or the like, or on a certain and particular one, as *assumpsit,* trespass, case, &c. demands two things, and it appears from his own showing, that he cannot have an action or better writ for one of them, the writ shall not abate in the whole, but stand for so much as is good ; but if it appear that he has a cause of action for both the things demanded, but the writ is not the proper writ for one of them, but he may have another for it in another form, the whole writ shall abate. Thus, in detinue for a box with charters and muniments concerning the plaintiff's inheritance, where the plaintiff declared for four charters come to the defendant's hands by trover, and entitled himself well to three, and it appeared by his declaration, that the fourth concerned land whereof the plaintiff and his wife were jointly seised, because this went to the action as to the husband, for he alone could not have another action, for that cause it was adjudged, that the writ should stand good for the residue.   So, if executors bring an action on the *stat.* 4. *Edw.* 3. *c.* 7. *de bonis asportatis in vita testatoris,* for *breaking the testator's close,* and taking away a certain sum of money in the testator's life time, though the writ will not lie for breaking the close, yet it is good for taking away the money.   2 *Saund. Rep.* by *Wms.* 210. *a. note.*   If, however, it does not appear by the plaintiff's own showing, that he cannot have an action alone for some of the several things demanded, it is obvious that the defendant must make it appear by averment, on a plea in abatement ; and on its being found true, the writ is abated as to that part of it which respects those particular things, and the action proceeds as to the residue.   Nor is this principle confined to cases where the declaration contains more than one count, but it is equally

applicable to one count alone, where the cause of action set *Windham,*
*July, 1845.*
forth in that count is in its nature divisible. Hence we find
in the first volume of *Wentworth's Plead. p.* 47. a precedent
drawn by Mr. *Burrough,* a very eminent special pleader, of
a plea in abatement to part of a count in *assumpsit,* that is, as
to a specified portion of the sum of money demanded in that
count, that the promise as to such portion was made by the
defendant, jointly with another person not sued. As little
difficulty would there be in a plea in abatement in an action
for a tort, for the omission of the necessary plaintiffs. *Vin.*
*Abr. tit. Abatement.* S. *a.* 1, 2, 3, 4, 5.

The cause of action stated in the declaration, in the case
before us, is clearly in its nature divisible, the time during
which the injury is alleged to have been committed being
separable; and if, as to any particular portion of that time,
any legal exception exists in regard to the mode of bringing
the action, there seems to be no objection to the defendant's
taking advantage of it, by plea in abatement, nor any difficul-
ty in that course. If this be so, the ground on which the de-
fendant claims that he should have had the advantage of it on
the trial, in the manner attempted, fails; since he should
have pleaded the non-joinder of *Smith* in abatement, as would
be required in the ordinary case of an omission to join the
necessary plaintiffs.

If, however, it were not competent for the defendant to
avail himself, by a plea in abatement, of the non-joinder of all
the joint owners as to that portion of the time when the plain-
tiff was not solely in possession, we should not think ourselves
called on, in the exercise of a just discretion, to grant a new
trial, under the circumstances of the present case. The
reason why it is held to be necessary to join all the joint ten-
ants or tenants in common, in actions of this description, is,
that the defendant may not be harassed, by the several joint
owners, with a multiplicity of suits for the same cause. Ap-
plying the reason of that rule to this case, it is obvious, that
the defendant has suffered no injury, by the course taken on
the trial, where only the plaintiff's proportion of the damages
sustained, was awarded by the jury. If it were true, as
claimed by the defendant, that during a portion of the time
when the injury was committed, the plaintiff was a joint owner
or occupier of the premises with *Smith,* the defendant would

HARVARD LAW LIBRARY

*Windham,*
*July, 1845.*

Branch
*v.*
Doane.

be liable to the same number of suits for the injury complain-
ed of, whether the plaintiff is, or is not, permitted, in the pres-
ent case, to recover his proportion of the damages for the
time when he was such joint owner or occupant.   Two suits,
in either case, and two only, would be necessary, in order to
do complete justice.   If the plaintiff recover, in this case, his
damages, not only while he occupied alone, but also while he
occupied jointly with *Smith,* an action by the latter, in addi-
tion to the present one, would be necessary to enable him to
recover his proportion of the damages; and if the plaintiff
does not here recover his damages for both periods, another
suit by him and *Smith* would be requisite, in order to recover
the damages sustained by them jointly.   As, therefore, the
number of suits against the defendant cannot be increased, by
the course adopted by the court below, we do not deem it a
sufficient ground for a new trial.

The defendant claimed on the trial, that it was necessary
for the plaintiff to prove a request from her to the defendant
to reduce the height of the dam in question.   This point,
however, has not been pressed before us, nor has any author-
ity in support of it been adduced.   This case clearly does not
fall within the principle established in *Johnson* v. *Lewis,* 13
*Conn. R.* 303. where the dam causing the obstruction com-
plained of, was erected, not by the defendant, but by his
grantor.   In the present case, it was erected and continued,
by the defendant himself, who therefore was the originator
of the injury.

We think, that the defendant has no reason to complain
of the manner in which the question, as to the effect on the
water of the temporary and main dams, was submitted to the
jury.   The question made was, whether the discharge of the
water through an aperture in the main dam, while the de-
fendant was erecting the *West* part thereof, so that, during
that time, it did not flow over, or rise to the height of, the
*East* side of the dam, constituted such a cessation or inter-
ruption of the defendant's use or enjoyment as prevented him
from connecting that time with the time during which the
water was actually raised to the height of the dam, for the
purpose of making out the requisite period of time in order to
presume a grant to the defendant to maintain the water to
the height of the dam.   The charge of the court below gave

*Windham,*
July, 1845.

Branch
*v.*
Doane.

the defendant the full benefit of all the time during which the water was raised continuedly to the height of the main dam, by both that and the temporary dam, but not of the time during which the water was not raised to that height before the main dam was finished. With respect to that portion of time during which the water was kept up only by the temporary dam, we think that the charge was over-favourable to the defendant. That dam was put up only for a limited and short time, and merely for a particular and specific purpose other than the permanent raising of the water, namely, to aid in the construction of another and different structure, the permanent or main dam, which was designed to be perpetual; and not as a means of enjoying or appropriating the water for any of the purposes for which the permanent dam was intended. It being confessedly temporary in its character and object, it did not constitute an assertion of a permanent right to raise the water; and to give it the effect of laying the foundation of a claim to the permanent enjoyment of it, would be to pervert it from the real purpose for which it was erected. If the purpose for which it was built had been in dispute, a question proper to be submitted to the jury might have been presented as to its effect: such however was not the case. The time during which the water was kept raised, by the temporary dam only, should, therefore, be laid out of the question, and the effect of the main dam alone be considered. After that dam, which was designed as a permanent structure, had been completed, occasional and ordinary interruptions of the use of the water, such, for instance, as might be necessary for the repairing of the dam, or clearing out the pond, would not prevent the enjoyment from being continuous so as to deprive the defendant of the benefit of the time during which such hindrances should occur, or of a claim of title by prescription. But while the dam is in the course of being erected, and before it has so far advanced as to form a permanent and effectual barrier to the water, it would be going too far to say, that it should operate to lay the foundation of a claim, as though it actually was completed, and had the effect of setting back the stream. Until it is so far completed as to answer the purpose for which it was intended, that of permanently raising the water, it cannot be said properly, that any permanent use or enjoyment of the water has

HARTFORD LAW LIBRARY

| 17 | 420 |
| 68 | 459 |
| 17 | 420 |
| 70 | 376 |

*Windham,*
*July, 1845.*

Branch
*v.*
Doane.

commenced; and until then, the defendant does not begin to acquire a right by prescription. And a title of this description ought to be made out clearly, and not by construction.

The superior court is therefore advised, that a new trial should not be granted.

In this opinion the other Judges concurred, except CHURCH, J., who was not present.

New trial not to be granted.