The Jo-Mark Sand and Gravel Company *v.* Carmella Pantanella

Brown, C. J., Jennings, Baldwin, Inglis and O'Sullivan, Js.

Argued February 5—decided March 24, 1953

*James N. Egan,* with whom was *Dennis P. O'Connor,* for the appellant (defendant in error).

*Frank A. Kelly, Jr.,* and *David Kotkin,* for the appellee (plaintiff in error).

BALDWIN, J. The defendant in error, hereinafter called the owner, instituted an action of summary process against the plaintiff in error, whom we shall call the company, in the Town Court of Rocky Hill. Judgment was rendered for the owner. The company thereupon brought a writ of error to the Court of Common Pleas, which set aside the judgment of the lower court and directed that judgment be rendered in favor of the company. The owner has appealed.

The facts stated in the bill of exceptions may be abbreviated as follows: The owner had title to a parcel of land in Rocky Hill, about twelve acres in extent, upon which there were gravel pits. On June 27, 1949, she and the company made an agreement in writing granting to the company, for a period of five years, "the exclusive right to enter upon [the parcel] ... now used for gravel pits and to remove therefrom sand, stone and gravel as [it] may see fit, providing, however, that [it] shall not remove more than one million (1,000,000) yards of sand, stone and gravel from said premises during the time limited within this agreement." The company

promised to pay 10 cents a yard for any material taken, "the royalty due to be paid at the expiration of each thirty (30) day period from the date of this contract." It was further stipulated that, if any of the royalty payments remained unpaid for a period of thirty days after they became due and payable, the owner, without previous notice and demand, might enter upon the premises, and such entry would terminate the agreement. The agreement stated further that the company should remove as much gravel, sand and stone every year as it could take profitably and that it should pay therefor at the agreed rate. On August 2, 1951, the owner refused to allow a power shovel and nine trucks to enter the land for the purpose of taking sand, stone and gravel. Thereafter, on August 27, 1951, she instituted a summary process action, claiming that the agreement was a lease which had terminated by reason of the failure of the company to make certain payments due on June 27, 1951.

Section 1379b of the 1951 Cumulative Supplement to the General Statutes provides that when a lease of any land shall terminate by lapse of time, or by reason of any expressed stipulation therein, or for nonpayment of rent under General Statutes, § 7107, the owner, upon the failure of the lessee to vacate pursuant to the prescribed notice given, may bring an action of summary process to obtain possession. By virtue of the precise wording of the statute, the remedy of summary process is available only when there is a lease and it has been terminated. The purpose of the action is to enable the landlord upon such termination to recover possession from the tenant. *Webb* v. *Ambler,* 125 Conn. 543, 550, 7 A.2d 228; *Davidson* v. *Poli,* 102 Conn. 692, 695, 129 A. 716. Because of the summary nature of this remedy, the

statute granting it has been narrowly construed and strictly followed. *Colt* v. *Eves,* 12 Conn. 243, 259; *White* v. *Bailey,* 14 Conn. 271, 277; *Lorch* v. *Page,* 97 Conn. 66, 69, 115 A. 681; *Vogel* v. *Bacus,* 133 Conn. 95, 97, 48 A.2d 237.

The pivotal question in this case is whether the agreement between the parties was a lease of the land or a grant of a right or license to go upon it and remove sand, stone and gravel. "A lease is more than a mere licence; it is a contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other; or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense." *Branch* v. *Doane,* 17 Conn. 402, 411; *Loomis* v. *G. F. Heublein & Bro.,* 91 Conn. 146, 150, 99 A. 483; 1 Tiffany, Real Property (3d Ed.) § 79; 51 C.J.S. 806. The agreement conferred a right known technically as a profit a prendre. *Pierce* v. *Keator,* 70 N.Y. 419, 421; *Payne* v. *Sheets,* 75 Vt. 335, 345, 55 A. 656; *Baker* v. *Kenney,* 145 Iowa 638, 642, 124 N.W. 901; see *Gateward's Case,* 6 Co. Rep. 59b, 77 Eng. Rep. 344, 10 Eng. Rul. Cas. 245 and note, 249; 28 C.J.S. 632. A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself. *Carroll* v. *Cooney,* 116 Conn. 112, 115, 163 A. 599; see *Bieluczyk* v. *Crown Petroleum Corporation,* 134 Conn. 461, 468, 58 A.2d 380; 1 Underhill, Landlord & Tenant, § 173; 32 Am. Jur. 30.

The words of the present agreement negative any intention to surrender an exclusive possession. All

that is given is an exclusive right to enter upon the land described, where there were already gravel pits, and to dig up sand, stone and gravel and cart them away. The agreement prescribes a definite limit to the amount to be removed and states that there shall be no excavation closer than fifty feet to certain dwelling houses located on the premises or to a depth deeper than a grade level with the tops of the foundations of those houses. Nothing is expressly said about possession of the land, nor can it be reasonably inferred from the terms of the contract that it was the intention of the owner to grant, or of the company to accept, exclusive possession. The agreement gave no greater interest in the land than a right to remove sand, stone and gravel, and a chattel interest in them after they had been removed. *Sanford's Appeal*, 75 Conn. 590, 595, 54 A. 739; *New Haven* v. *Hotchkiss*, 77 Conn. 168, 173, 58 A. 753; *Miller* v. *State*, 121 Conn. 43, 47, 183 A. 17.

While the terminology used by the parties is not conclusive, it is, nevertheless, indicative of their intention as to whether their relationship was to be that of landlord and tenant. *Branch* v. *Doane*, 17 Conn. 402, 411; *Clark* v. *Harry*, 182 Va. 410, 415, 29 S.E.2d 231; *Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal. 2d 633, 637, 96 P.2d 122. The words and terms which customarily appear in a lease, such as "demise," "let," "lease," "landlord," "tenant," "lessor," "lessee," "rent," and "rental," are totally lacking in the written agreement of the parties. See Jones, Legal Forms (9th Ed.) p. 1244. What is first described in the agreement as "the exclusive right to enter" upon the land is referred to in the following paragraph as a "privilege." There are no provisions which specifically confer possession upon the company to the exclusion of the owner. The rela-

tionship created by the document was not one of lessor and lessee. Therefore the action of summary process does not lie.

There is no error.

In this opinion the other judges concurred.