[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application for prejudgment remedy filed by Message Center Management, Inc. (Message Center) against David Getchell, Shannon Late, and Old Post Road Holdings, LLC. On October 17, 2000, the court held an evidentiary hearing on this application and finds probable cause to believe the following facts exist.
On January 11, 1993, Getchell owned real property at 497 Old Post Road, Tolland, Connecticut. Located on this property were his residence and two radio transmission towers. Doing business as Connecticut Communications, Getchell made agreements with various clients whereby these clients were authorized to install on these towers antennae needed for local radio communications, such as paging services and two-way radio systems used by trucking firms. At that time no cellular or personal communication systems (PCS) clients utilized the towers. CT Page 15976
One customer of Getchell's was the applicant, Message Center. Message Center employs 175 tower sites within Connecticut. It owns some of these sites and leases others. Message Center personnel recognized that Getchell's property had the potential to attract very substantial clients, such as cellular and PCS providers. Message Center convinced Getchell of the value of his site and of the mutual benefit that could be had if he allowed Message Center to market and manage use of the towers. On January 11, 1993, Getchell and Message Center entered into a management agreement whereby Message (enter would promote use of the location, obtain whatever regulatory authorizations proved necessary, negotiate with prospective clients, and handle all dealings with carriers who chose to utilize the towers.
In exchange for these services, Message Center would retain fifty percent of the gross revenues generated by the new clients and remit the other fifty percent to Getchell. Also, under the management agreement, all payments by these new carriers were to be made to Message Center.
In order to attract major carriers, such as Sprint, erection of a new, larger tower was required. In 1996, Message Center and Sprint entered an agreement that Message Center would construct such a tower and Sprint would contribute $60,000 toward construction costs. After overcoming several regulatory hurdles, Message Center built the new tower at a cost to it of $138,000. In August 1999, Sprint executed a ten year contract to use the 497 Old Post Road facility for $300,000.
Message Center also obtained other high paying clients including Pagenet, SNET, MobileComm, and 338 Elm Street. Message Center and Getchell, or his daughter, Shannon Late, acting on his behalf, executed licensing agreements with these clients. The licensing agreements afforded to the carriers nonexclusive right to install, operate, and maintain communications equipment on the tower. These contracts also required the carrier to pay the licensing fees to Message Center.
Unbeknownst to Message Center, on December 3, 1999, Getchell sold the 497 Old Post Road property to respondent, Old Post Road Holdings, LLC. The purchase and sale agreement for this transfer obligated Getchell to send letters to all clients using the towers that, henceforth, all licensing fees were to be sent to Old Post Road Holdings, LLC, instead of Message Center. On December 3, 1999, Getchell and Late complied with this obligation and notified by letter all of their clients to discontinue payment to Message Center and, instead, remit fees to Old Post Road Holdings, LLC. In accordance with this notification, all clients ceased sending payments to Message Center. Additionally, Old Post Road Holdings, LLC, agreed to indemnify any carrier if Message Center took legal action against the carrier for cessation of the payments. CT Page 15977
In the proposed complaint, Message Center sues Getchell, Late, and Old Post Road Holdings, LLC, for breach of contract, unjust enrichment, violations of the Connecticut Unfair Trade Practices Act (CUTPA), and civil conspiracy. Additionally, the complaint alleges breach of fiduciary duty against Getchell and Late and tortious interference with contractual relationships against Old Post Road Holdings, LLC.
 A.
In order to obtain a prejudgment remedy under General Statutes §52-278d, the applicant need only establish probable cause for the validity of its claim, State v. Ham, 253 Conn. 566, 569 (2000). Section 52-578d provides that if probable cause is established that judgment will be rendered in the applicant's favor in the amount sought, the prejudgment remedy shall be granted.
The hearing on such application is not a full-scale trial on the merits but concerns only whether the applicant is entitled to retain custody of the respondent's property pending final adjudication, Soltesz v. Miller,56 Conn. App. 114, 116 (1999). At the hearing, the court evaluates the evidence and arguments to determine whether there is probable cause to sustain the validity of the applicant's claim, East Lyme v. Wood,54 Conn. App. 394, 396 (1999).
The applicant need not prove that the claim will definitely succeed at trial but only that there is probable cause to sustain the legitimacy of the claim, Giordano v. Giordano, 39 Conn. App. 183, 206 (1995). For purposes of § 52-578d, probable cause is "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action," Tyler v. Schnabel,34 Conn. App. 216, 219 (1994), It "is a flexible common sense standard that does not demand that a belief be correct or more likely true than false," Fischel v. TKPK, Ltd, 34 Conn. App. 22, 24 (1994).
 B.
The evidence clearly demonstrates probable cause to believe that Message Center and Getchell entered into a written contract wherein Message Center would manage the procuring and servicing of the communication tower's clients, receive the revenue from the clients, and retain fifty percent of the gross as payment for its efforts. Also, it is undisputable that Message Center, Getchell, and Late entered into written contracts with these clients which reflected this arrangement. Further, probable cause exists to believe that the respondents agreed to notify CT Page 15978 these clients to cease doing business through Message Center; that these clients were notified pursuant to the respondent's agreement; and that, in response, these clients are now remitting the licensing fees to Old Post Road Holdings, LLC, instead of to Message Center.
The activities of Getchell and Late constitute a breach of the contract between Getchell and Message Center which mandated that the clients procured by Message Center pay Message Center directly. Additionally, each client's cessation of payment to Message Center at the order of Getchell and Late is a breach of each individual contract between the client, Message Center, Getchell, and Late.
 C.
Old Post Road Holdings, LLC, demanded that Getchell and Late send the notification letters to these clients as a condition for the purchase of 497 Old Post Road from Getchell. This demand and agreement establishes, knowledge by Old Post Road Holdings, LLC, of the existence of and the terms of the contracts between Message Center and Getchell and the clients and constitutes intentional interference with both the management contract and licensing agreements. Message Center has suffered actual damages for this interference because of the loss of fifty percent of the gross revenue generated after the sale of the property. This loss amounts to $500,000.
"Not every act that disturbs a contract or business expectancy is actionable," Heller v. Buckley Broadcasting Corp., 47 Conn. App. 764, 768
(1998). But Connecticut has "long recognized" a cause of action for tortious interference with contractual rights, Daley v. Aetna Life andCasualty, Co., 249 Conn. 766, 805 (1999). The elements of this cause of action are (1) the existence of a contractual-relationship; (2) the tortfeaser's knowledge of that relationship; (3) the tortfeaser's intent to interference with the contract; (4) tortious interference; and (5) actual loss suffered by the plaintiff as a result of that interference,Callum v. Chapin, 40 Conn. App. 449, 452 (1996).
Interference is tortious if it is the product of fraud, misrepresentation, intimidation, molestation, or malice, Appleton v.Board of Education, 53 Conn. App. 252, 267 (1999). Malice is not necessarily ill will but rather intentional interference without justification, Daley v. Aetna Life and Casualty Co., supra, 806.
In this present case the applicant has established probable cause to believe that Getchell and Late breached the management agreement with Message Center and the individual contracts with the various clients by ordering those clients to pay the fees to Old Post Road Holdings, LLC, CT Page 15979 instead of Message Center. Old Post Road Holdings, LLC, intentionally and tortiously interfered with these contracts by inducing Getchell and Late to issue orders to the clients to stop paying Message Center. The inducement was requiring such notification as a condition of purchase of the property. Message Center has sustained financial losses as a result.
 D.
The respondents assert, however, that probable cause to believe Message Center will ultimately prevail is lacking because the contracts in question are invalid. The respondents contend that General Statutes § 20-325a prohibited Message Center from bringing suit to recover commissions under the service contracts or the contracts with the carriers because Message Center lacked a real estate broker's or salesperson's license.
General Statutes § 20-312 bars acting as a real estate broker or salesperson without a license to do so. General Statutes §§ 20-311(1) and (2) define "real estate broker" and "real estate salesperson" to encompass persons who engage in the listing for sale, selling, exchanging, buying, renting, or attempting the same with respect to "an estate or interest in real estate" or mobile homes. The court holds that Message Center, in this case engaged in none of the activities falling within the definition of real estate broker or salesperson. No real estate license was needed under § 20-312, and. therefore § 20-325a
is no bar to the initiating of this lawsuit and recovery under these contracts.
The respondents' claims that message Center needed a real estate license, and that the contracts between Message Center and Getchell and those with the clients were invalid, hinges on whether the agreements to permit installation, operation, and maintenance of antennae on the towers can legitimately be classified as leases or licenses. This is so because a lease is an interest in real estate whereas a license is personality,Great New York Savings Bank v. Welch. Ctr., Superior Court, New Haven J.D., d.n. CV 94-358199 (December 29, 1999), Meadow, J.
A license in real property is a personal, revocable, and unassignable privilege to enter another's land for a limited purpose without creation of any possessory interest in the land, Muniz v. Kravis, 59 Conn. App. 704,714 (2000). Unlike a lease, a license in real property confers a privilege to act on another's land without obtaining any interest in the realty, Id. A license can only be exercised for the specific purpose for which consent was given, Miller v. Grossman Shoes, Inc., 186 Conn. 229,237 (1982). CT Page 15980
A lease, on the other hand, "is a contract under which an exclusive possessory interest in property is conveyed," Clean Corp. v. Faston,33 Conn. App. 197, 201 (1993). A lease is more than a mere license; it is a contract for possession in consideration for rent, Jo-Mark Sand andGravel Co. v. Pantanella, 139 Conn. 598, 601 (1953). A lease transfers an estate in real property to a tenant for a stated period with reversion in the owner, Id. The distinguishing characteristic of a lease is thesurrender of possession so that the tenant may exclude the owner himself, Id.
Whether an agreement is a lease or a license relating to real estate is controlled by the intent of the parties to the agreement, MiddletownConn. Assoc. Ltd. v. Middletown, 42 Conn. App. 426, 440 (1996). It is the character of the agreement itself rather than the words or phrasing used that determines whether a transaction is a license or a lease, ColumbiaPictures Industries v. Tax Commission, 176 Conn. 604, 607 (1979).
It is often difficult to discriminate between a lease and a license. InMuniz v. Kravis, supra, the Appellate Court held that occupancy of an apartment incidental to employment created a license rather than a lease. Parking privileges have been construed as licenses rather than leases,Middletown Conn. Assoc. Ltd. v. Middletown, supra. Installation of video games can be licenses rather than leases, Park City Amusements v. FrogPond, Inc., Superior Court, Fairfield J.D. d.n. CV 94-310493 (February 16, 1995), Maiocco, J. Space in the rear of a store was leased not licensed, Sigal v. Wise, 114 Conn. 297, 308 (1932). A contract to install, operate, and maintain laundry machines was a license, CleanCorp. v. Faston, supra, fn.5. A kiosk installed in a mall operated under a license, not a lease, Connecticut Post Ltd. v. Levine, Superior Court, New Haven J.D. Housing Session, d.n. 9802-5-368 (April 20, 1998), Levin,J., Purchase of a ticket for an amusement ride creates a license to use the ride rather than a lease, Bobryk v. Lincoln Amusement, Inc., Superior Court, Hartford J.D., d.n. CV 95-547084 (January 5, 1996), Sheldon, J.
Applying the legal principles recited above to the facts for which probable cause has been found, the court concludes that the contracts to install, operate, and maintain communication antennae on the towers in question created licenses rather than leases. No specific sites on the towers were conveyed. Message Center assigned placement of the equipment so as to maximize spacing and minimize transmission interference. The clients obtained no possessery interest in the tower or the land upon which it rests. The contracts simply confer the privilege to use the towers for the very specific purpose of antennae installation, operation, and maintenance. The carriers received no right to exclude the owner of the land from the land or the towers. See, Hi-Ho Tower Inc. v.Com-Tronics, Inc., 255 Conn. 20, 23 (2000). CT Page 15981
The fact that the clients were also allocated storage space on the ground for maintenance equipment is inconsequential. Again, use of this storage space was assigned by Message Center and created no possessery interest in the land. Use of land incidental or ancillary to a licensed use does not necessarily create a lease, Muniz v. Kravis, supra, 714.
Also, the usage of the words "lease" and "tenant" in the agreements is indeterminant, Columbia Pictures Industries v. Tax Commission, supra. It is the actual character of the transaction rather than the nomenclature which controls, Id. In the present case, the character of these agreements with the carriers is that of a license to install, operate and maintain communications antennae and not to convey any possessery interest.
Because the agreements in question created no interest in real estate but were merely licenses to conduct certain activity on the land, the contracts fall outside of the licensing requirements of Chapter 392 of the General Statutes. The contracts, therefore are valid and enforceable.
For these reasons, the court grants the application for prejudgment remedy against the respondents in the amount of $500,000. The carrier contracts already obtained and serviced by Message Center would generate fees for Message Center about this sum until the contracts expire plus the renewed contract of 338 Elm Street which was in the process of completion when Old Post Road Holdings took over.
Because the court has found probable cause to believe Message Center would prevail on these counts against the respondents and that prejudgment remedies ought to issue, the court need not address the remaining counts against the respondents.
Sferrazza, J.