STEPHANIE TAPPIN *v.* HOMECOMINGS FINANCIAL
NETWORK, INC.
(SC 16724)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 10—officially released September 16, 2003

*Amy Eppler-Epstein,* for the plaintiff in error.

*Geoffrey K. Milne,* for the defendant in error.

*David A. Pels* filed a brief for the Connecticut Alliance for Basic Human Needs et al. as amici curiae.

*Opinion*

VERTEFEUILLE, J. The principal issue raised by this writ of error is whether a party who has acquired title to a property through a foreclosure action can eject a tenant who took possession after the lis pendens was filed, when the tenant was not joined as a party to the foreclosure action pursuant to General Statutes § 49-22 (a).[1] The plaintiff in error, Stephanie Tappin (plaintiff), who was a tenant at a property acquired through foreclosure by the defendant in error, Homecomings Financial Network, Inc. (defendant), filed a writ of error with this court claiming that the trial court improperly refused to enjoin an execution of ejectment against her. We conclude that a tenant must be joined as a party to the foreclosure action in order to be ejected pursuant to § 49-22 (a).

The relevant facts and procedural history are as follows. In July, 1999, the defendant's predecessor in title brought a mortgage foreclosure action against Enid Mullings, the owner of property located at 762 Woodin

---

[1] General Statutes § 49-22 (a) provides: "In any action brought for the foreclosure of a mortgage or lien upon land, or for any equitable relief in relation to land, the plaintiff may, in his complaint, demand possession of the land, and the court may, if it renders judgment in his favor and finds that he is entitled to the possession of the land, issue execution of ejectment, commanding the officer to eject the person or persons in possession of the land and to put in possession thereof the plaintiff or the party to the foreclosure entitled to the possession by the provisions of the decree of said court, provided no execution shall issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens. The officer shall eject the person or persons in possession and may remove such person's possessions and personal effects and set them out on the adjacent sidewalk, street or highway."

Street in Hamden (property).[2] In conjunction with the foreclosure, the defendant's predecessor filed a lis pendens against the property in the Hamden land records.

A judgment of strict foreclosure was rendered on October 15, 2001, and the initial law date was scheduled for December 17, 2001. On November 1, 2001, after the foreclosure action had gone to judgment but prior to the expiration of the law days, Mullings entered into a written lease with the plaintiff, and the plaintiff and her six children took occupancy of the property.[3] The plaintiff was unaware of the foreclosure action when she signed the lease and moved into the property. The plaintiff was never added as a party to the foreclosure action, and the defendant did not foreclose the plaintiff's interest as an omitted party pursuant to General Statutes § 49-30.[4]

[2] Aames Capital Corporation initiated the mortgage foreclosure action against Mullings. Thereafter, the defendant was assigned the mortgage from Ames Capital Corporation and in May, 2000, was substituted as the plaintiff in the foreclosure action.

[3] The plaintiff received aid from the Connecticut rental assistance program. The Hamden housing authority, as an agent for the Connecticut rental assistance program, was also named as a party to the lease between the plaintiff and Mullings.

[4] General Statutes § 49-30 provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

Thereafter, an execution of ejectment was issued against Mullings and was served on the plaintiff.[5] The execution of ejectment was scheduled to be enforced on February 15, 2002, nine days after the plaintiff received notice of the ejectment.

On February 11, 2002, the plaintiff moved to enjoin the execution of ejectment. After a hearing, the trial court denied the plaintiff's motion to enjoin but stayed the execution of ejectment until May 1, 2002. The trial court further ordered payment of use and occupancy in accordance with the lease as a condition of the stay. The plaintiff then filed this writ of error with this court on February 28, 2002.[6] After oral argument on the writ of error, this court was notified in a letter from the plaintiff's attorney that the plaintiff had vacated the property.

In her writ of error, the plaintiff claims that § 49-22 (a) prohibits her ejectment because she was not made a party to the foreclosure action.[7] The defendant asserts that this court lacks subject matter jurisdiction over the present case for multiple reasons. It further claims that the plaintiff has failed to provide an adequate record for this writ of error.[8] Because the plaintiff has

[5] The execution of ejectment also named George Gardi and Sylvia Gardi, who are listed in the foreclosure action as claiming an interest in the property by virtue of a mortgage subordinate to the defendant's mortgage. They did not reside at the property when the plaintiff leased the property or when the execution for ejectment was served.

[6] General Statutes § 52-272 provides in relevant part: "Writs of error for errors in matters of law only may be brought from the judgments of the Superior Court to the Supreme Court . . . ."

[7] The plaintiff further contends that she was deprived of her due process right to adequate notice of the execution of ejectment. We do not address the due process claim in the present case. "[I]t is accepted judicial practice to consider and resolve statutory issues before reaching constitutional conundra . . . ." Doe v. Heintz, 204 Conn. 17, 38, 526 A.2d 1318 (1987). Because the writ of error can be resolved on the statutory claim, it is not necessary to consider the constitutional claim.

[8] With regard to the adequacy of the record, the defendant seems to make the unusual claim that at the February, 2002 hearing on the motion to enjoin

vacated the property, we must consider the threshold jurisdictional issue of mootness before addressing the parties' remaining claims. We conclude that the writ of error is moot but that it nonetheless comes within the exception to the mootness doctrine for cases that are capable of repetition yet evading review. We further conclude that we properly have jurisdiction over the plaintiff's claims. We therefore reach the merits of the plaintiff's claim that § 49-22 (a) prohibits her ejectment because she was not made a party to the foreclosure. We agree with the plaintiff.

I

We begin with the defendant's claim that the present writ of error is moot as a result of the plaintiff having vacated the property. Both parties agree that, although the plaintiff's claim is moot because this court can render no practical relief, we should nevertheless consider the merits of the issue raised by the plaintiff in the present writ because it is capable of repetition yet evading review. We agree with the parties.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of

the ejectment, the plaintiff failed to present evidence to the trial court of the irreparable harm that she would suffer after the stay of execution expired on May 1, 2002. We find no merit to the defendant's claim to the extent that we understand it.

Specifically, the defendant asserts that, "[t]he affidavit of the Plaintiff in support of the Motion to Enjoin the Ejectment is silent on whether any irreparable harm existed and, more importantly, whether [the] Plaintiff would be able to locate alternative housing in [two and one-half] months. In that regard, it should be noted that most residential leases require only [thirty] days notice to terminate or in the alternative, [five] days upon service of a notice to quit to vacate the premises. . . . Simply put, no evidence was offered if [the plaintiff] would be irreparably harmed by being ejected on May 1, 2002, after having over [two] months to find alternative housing." The harm to the plaintiff, however, is that she improperly would be ejected from the premises, contrary to the provisions of her leasehold interest; the harm is not eliminated by the possibility of her receiving alternate housing.

the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . .

"We note that an otherwise moot question may qualify for review under the capable of repetition, yet evading review exception. To do so, however, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, [the writ of error] must be dismissed as moot." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754–55, 826 A.2d 156 (2003); accord *Conetta* v. *Stamford*, 246 Conn. 281, 295–96, 715 A.2d 756 (1998). We conclude that the present case meets all three requirements for review under the capable of repetition yet evading review exception.

First, we determine that most cases addressing the issue of the ejectment of a tenant who took possession after the filing of a lis pendens without making the tenant a party to the foreclosure would become moot before appellate litigation could be resolved. "If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover,

if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced." *Loisel* v. *Rowe*, 233 Conn. 370, 383–84, 660 A.2d 323 (1995).

The issue raised in the present writ is necessarily limited in its duration because there is a strong likelihood that the foreclosing lender will obtain possession of the property through actions that are more expeditious than the appeal or writ of error routes. The lender can obtain possession from the tenant by bringing a summary process action pursuant to General Statutes § 47a-23a[9] and successfully obtaining judgment while a writ of error is pending concerning the execution of ejectment. A summary process action is expeditious because the pleadings must advance every three days.[10] Alternatively, the lender can bring a foreclosure action against the tenant as an omitted party pursuant to § 49-30.[11] Because it is unlikely that a tenant will have a defense to the summary process action or the foreclosure, these proceedings are likely to be resolved more quickly than an appeal or writ of error.

The present writ of error also satisfies the second requirement for the capable of repetition yet evading review exception. "A requirement of the likelihood that a question will recur is an integral component of the

[9] General Statutes § 47a-23a (a) provides in relevant part: "If, at the expiration of the three days prescribed in section 47a-23, the lessee or occupant neglects or refuses to quit possession or occupancy of the premises, any commissioner of the Superior Court may issue a writ, summons and complaint which shall be in the form and nature of an ordinary writ, summons and complaint in a civil process, but which shall set forth facts justifying a judgment for immediate possession or occupancy of the premises and make a claim for possession or occupancy of the premises. . . ."

[10] General Statutes § 47a-26c provides: "All pleadings, including motions, shall advance at least one step within each successive period of three days from the preceding pleading or motion."

[11] See footnote 4 of this opinion.

capable of repetition, yet evading review doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case nor prospectively resolve cases anticipated in the future." (Internal quotation marks omitted.) Id., 384.

The issue raised by the plaintiff in the present writ already is recurring in other cases. Several ejectment cases raising issues similar to that in the present writ currently are pending in the Superior Court. See *Washington Mutual* v. *Greengas*, Superior Court, judicial district of New Haven, Docket No. CV02-0459598S; *Mortgage Electronic Registration Systems* v. *Marra*, Superior Court, judicial district of New Haven, Docket No. CV01-0455341S. The existence of these similar cases demonstrates that a decision in the present writ of error prospectively will resolve other pending cases.

Finally, the issue raised in the present writ also meets the public importance requirement. "Since judicial resources are scarce, and typically reserved for cases that continue to be contested between the litigants, this court does not review every issue that satisfies the criteria of limited duration and likelihood of recurrence. Consideration of the importance of the issue represents a sound means for distinguishing those cases that should be reviewed and those that should not." *Loisel* v. *Rowe*, supra, 233 Conn. 387. The present writ of error calls for us to determine the respective rights of a foreclosing lender and a tenant in possession of the foreclosed property, an issue of obvious public importance given the number of foreclosure cases brought in the courts of this state each year. We, therefore, conclude that, although moot, the claim raised by the plaintiff in the present writ is capable of repetition yet evading review.

## II

We next must consider the remaining jurisdictional claims raised by the defendant, however, we find no merit to any of the claims.

### A

The defendant first asserts that this court does not have subject matter jurisdiction over the present writ of error because the ruling at issue in the writ is not a final judgment. Specifically, the defendant claims that the plaintiff's motion to enjoin the ejectment was an application for a temporary injunction, and the denial of such a motion is not an appealable final judgment.[12] We disagree.

We begin by setting forth the standard of review that governs our examination of this issue. The lack of a final judgment implicates the authority of this court to hear the writ of error because it is a jurisdictional defect. See *Stroiney* v. *Crescent Lake Tax District*, 197 Conn. 82, 86, 495 A.2d 1063 (1985); *Guerin* v. *Norton*, 167 Conn. 282, 284, 355 A.2d 255 (1974). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary . . . ." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 81, 818 A.2d 758 (2003); accord *State* v. *Parrott*, 262 Conn. 276, 286, 811 A.2d 705 (2003).

"The statutory right to [a writ of error] is limited to appeals by aggrieved parties from final judgments. General Statutes §§ 52-263, 51-197a; see Practice Book § [72-1]. Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must

[12] The plaintiff's motion for an order to enjoin the ejectment does not state whether the injunctive relief sought was temporary or permanent. We assume, for purposes of resolving this jurisdictional issue, that it was in the nature of temporary injunctive relief.

always determine the threshold question of whether the [writ of error] is taken from a final judgment before considering the merits of the claim. See *State* v. *Seravalli*, 189 Conn. 201, 455 A.2d 852 (1983); *State* v. *Spendolini*, 189 Conn. 92, 454 A.2d 720 (1983) . . . .

"In both criminal and civil cases, however, we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Bell*, 179 Conn. 98, 99, 425 A.2d 574 (1979)." (Citations omitted.) *State* v. *Curcio*, 191 Conn. 27, 30–31, 463 A.2d 566 (1983). We conclude that the trial court's denial of the plaintiff's motion to enjoin the ejectment is a final judgment within the meaning of § 52-263[13] because the order so concluded the rights of the plaintiff that further proceedings could not affect them.

The second prong of the two part test for finality under *Curcio* focuses on the nature of the right at issue. "It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal. . . . Accordingly,

---

[13] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she *then* holds." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 734–35, 818 A.2d 731 (2003).

At the time of the hearing on her motion to enjoin the ejectment, the plaintiff had a right to possession of the property with her family pursuant to a valid lease. The trial court determined that the plaintiff could be ejected, and would thereby lose her right to possession. After the trial court's denial of the plaintiff's motion, and the expiration of the stay ordered by the court, no further hearing or proceeding could affect or change her right to possession, which was fully determined by the trial court. The trial court's action therefore was appealable under the second prong of *Curcio*.

B

Next, the defendant claims that the plaintiff's requested injunctive relief was an improper attempt to open a judgment of foreclosure after title to the property had vested in the defendant, and thus, that this court lacks subject matter jurisdiction.[14] We disagree.

We begin by setting forth the standard of review that governs our examination of this issue. As we previously set forth in part II A of this opinion, the issue of subject matter jurisdiction is a question of law. Accordingly, our review is plenary. See *Gaynor* v. *Payne*, 261 Conn.

---

[14] The defendant also challenges the writ of error on the basis that it is untimely because the period within which a writ of error could be brought expired twenty days after the entry of the foreclosure judgment. The defendant misinterprets the plaintiff's writ, which was not in the nature of an appeal from the foreclosure judgment. The plaintiff could not appeal from the foreclosure judgment because she was not a party to the foreclosure action. Instead, the present writ challenges the trial court's denial of her motion for injunctive relief.

585, 595, 804 A.2d 170 (2002); *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999).

The defendant bases its claim that the plaintiff's request for an injunction was an improper attempt to open a judgment of foreclosure on General Statutes § 49-15 (a),[15] which precludes opening a judgment of strict foreclosure once title has vested in an encumbrancer. This court has elucidated in the past, however, that title to property and possession of that property are separate questions. *First Federal Bank, FSB* v. *Whitney Development Corp.*, 237 Conn. 679, 690, 677 A.2d 1363 (1996). "Indeed, courts have recognized that, in equity, title and possession of premises may not automatically be linked." (Internal quotation marks omitted.) Id., 690–91. A party can obtain title through a foreclosure action without also obtaining the right to possession. Id., 690. Thus, in the present writ, we can consider the defendant's right to possession of the property without opening the judgment of foreclosure or jeopardizing the defendant's title to the property. The defendant, therefore, has failed to establish that this court lacks subject matter jurisdiction.

## III

We now turn to the principal issue raised in this writ of error. The plaintiff claims that § 49-22 (a) prohibits

[15] General Statutes § 49-15 (a) provides: "Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer."

In 2002, after the plaintiff had filed her motion for an order to enjoin the ejectment, § 49-15 was amended by the addition of language that currently is codified at § 49-15 (b). The previously existing language of the statute remained unchanged, however, and was designated as subsection (a). See Public Acts 2002, No. 02-93, § 2. For purposes of clarity, we refer herein to the current codification of § 49-15.

the issuance of an execution of ejectment against a tenant who was not named as a party to the foreclosure action. We agree with the plaintiff.

Resolution of this issue requires that we construe the meaning of § 49-22 (a). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be

*the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003). "[T]he plaintiff's claim presents a question of statutory interpretation over which our review is plenary." (Internal quotation marks omitted.) *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 709, 817 A.2d 91 (2003); accord *State* v. *Ehlers*, 252 Conn. 579, 589, 750 A.2d 1079 (2000).

We begin our analysis with the text of the statute. General Statutes § 49-22 (a) provides in relevant part: "In any action brought for the foreclosure of a mortgage or lien upon land, or for any equitable relief in relation to land, the plaintiff may, in his complaint, demand possession of the land, and the court may, if it renders judgment in his favor and finds that he is entitled to the possession of the land, issue execution of ejectment, commanding the officer to eject the person or persons in possession of the land and to put in possession thereof the plaintiff or the party to the foreclosure entitled to the possession by the provisions of the decree of said court, *provided no execution shall issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens. . . .*"[16] (Emphasis added.) The language of § 49-22 (a) therefore prohibits the ejectment of any person not a party to the foreclosure unless such person is a "transferee" or "lienor." The terms "transferee" and "lienor" are not defined in the statute. The defendant contends that the plaintiff is a transferee of a possessory interest in the property who can be ejected under § 49-22 (a) despite not having

---

[16] For the full text of § 49-22 (a), see footnote 1 of this opinion.

been made a party to the foreclosure action. We disagree.

The key to understanding the portion of § 49-22 (a) that is at issue before us is found in the legislative history of an amendment to the statute enacted in 1984. Number 84-539 of the 1984 Public Acts (P.A. 84-539) was adopted in response to *Hite* v. *Field*, 38 Conn. Sup. 70, 462 A.2d 393 (1982), a Superior Court decision concerning the rights of tenants in a mortgage foreclosure action. In *Hite*, the court enjoined an execution of ejectment against tenants under an oral, month-to-month lease who had not been named as parties to the foreclosure action, finding that the lis pendens filed in the land records did not give adequate notice of the foreclosure to the tenants. Id., 77–78. The court ruled that the tenants' constitutional due process rights were violated because they were deprived of notice and an opportunity to be heard during the foreclosure action. Id., 78.

"In 1984, the law revision commission proposed four alternate amendments to § 49-22 to the judiciary committee. These proposals were intended *to strengthen the due process rights of a mortgagor's tenant upon foreclosure* in response to a Superior Court decision; [id.] 79; declaring the [then] existing provision unconstitutional. See Law Revision Commission, Ninth Annual Report of the Connecticut Law Revision Commission to the General Assembly (1983) pp. H-2 to H-28." (Emphasis added.) *First Federal Bank, FSB* v. *Whitney Development Corp.*, supra, 237 Conn. 692.[17] Prior to the 1984 amendment, § 49-22 (a) provided in part that "no execution shall issue against any person in possession

---

[17] The concurring and dissenting opinion incorrectly suggests that P.A. 84-539 might have been intended to protect only month-to-month tenants. In *First Federal Bank, FSB* v. *Whitney Development Corp.*, supra, 237 Conn. 692–93, we did not construe the legislative history of this act so narrowly, but found, instead, an intention to protect tenants generally.

who is not a party to the action unless the person is bound by the judgment by virtue of a lis pendens. . . ." General Statutes (Rev. to 1983) § 49-22 (a). Public Act 84-539 deleted the phrase "unless the person" and inserted "except a transferee or lienor who," thus bringing that subsection of the statute to its current form, which limits the availability of an execution of ejectment to persons in possession who are parties to the action, or to a party not in possession who is "a transferee or lienor . . . ."

The comments of proponents of P.A. 84-539 during the legislative floor debate made clear that the amendment, which was set forth in Substitute House Bill No. 5826, was intended to prohibit the ejectment of tenants in a foreclosure action unless the tenant was made a party to that action. See 27 S. Proc., Pt. 8, 1984 Sess., p. 2767, remarks of Senator Howard T. Owens, Jr.; 27 H.R. Proc., Pt. 9, 1984 Sess., p. 3131, remarks of Representative Martin M. Looney. During the introduction of the bill, Senator Owens stated: "On the bill itself . . . it would prohibit ejectment of any person who is in possession of real estate such as a tenant unless such person is named as a party to the foreclosure lawsuit." 27 S. Proc., supra, p. 2767. Similarly, Representative Looney stated: "Under existing law . . . in any action to foreclosure a mortgage or lien against land, the court may if the foreclosing party is entitled to gain possession of the land . . . order tha[t] an officer, normally a sheriff, may eject any person in possession of the land. This bill would prohibit the ejectment of any person who is in possession of the real estate, such as a tenant, unless such person is named as a party to the foreclosure lawsuit. Under existing law, a person in possession who's not a party to the foreclosure, such as a tenant, may be ejected if the foreclosing party had filed a notice . . . on the land records." 27 H.R. Proc., supra, p. 3131.

The provision excepting "a transferee or lienor" was added to Substitute House Bill No. 5826 during floor debate in the Senate. The purpose of this amendment was to make clear that despite the fact that § 49-22 would now provide that no one would be subject to ejectment unless made a party to the foreclosure action, this provision would not protect transferees or lienors who were bound by the judgment because of the filing of a lis pendens. The amendment was taken up first and at that time, Senator Owens stated that "[i]t just simply provides . . . an exception for the transferee or lienor with respect to this matter." 27 S. Proc., supra, p. 2767. When the bill *as amended* was taken up immediately thereafter, Senator Owens made the remarks that we cited previously, stating that tenants would need to be made parties to the foreclosure in order to be ejected.

When Substitute House Bill No. 5826, as amended, was discussed on the floor of the House of Representatives thereafter, Representative Richard D. Tulisano described the purpose of the bill's amendment. "Obviously this amendment will change the file copy to some extent to make sure that someone who is a party to the action, say an owner, cannot then transfer to another in order to evade being evicted or ejected from the property." 27 H.R. Proc., Pt. 18, 1984 Sess., p. 6624. We conclude, on the basis of these clear statements of legislative purpose, that the provision in § 49-22 (a) excepting transferees or lienors was not intended to apply to tenants.

Moreover, we note that the construction of the statute urged by the defendant is illogical. To construe transferees or lienors as including tenants would render P.A. 84-539 wholly meaningless, in that the protection for tenants specifically intended by the legislation would then be vitiated by the amendment regarding transferees or lienors. We will not construe a statute so as to

effect an absurd result. See *Vibert* v. *Board of Education*, 260 Conn. 167, 177, 793 A.2d 1076 (2002).

We further note that our Appellate Court has interpreted § 49-22 in the same manner as we do. In *Federal Home Loan Mortgage Corp.* v. *Van Sickle*, 52 Conn. App. 37, 42, 726 A.2d 600 (1999), the Appellate Court stated: "[A] foreclosing mortgagee . . . has two options for obtaining possession of premises from a tenant. The mortgagee can name the tenant as a party in the foreclosure action and obtain a judgment of ejectment pursuant to . . . § 49-22, or after obtaining title, the mortgagee can proceed with a summary process action pursuant to [General Statutes] § 47a-23."

We find no merit to the defendant's remaining contentions. First, the defendant contends that General Statutes § 52-325,[18] which provides for the filing of a lis

[18] General Statutes § 52-325 (a) provides: "In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards, or (2) a defendant, when he sets up an affirmative cause of action in his answer and demands substantive relief at the time the answer is filed, if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property, except that no such notice may be recorded in an action that alleges an illegal, invalid or defective transfer of an interest in real property unless the complaint or affirmative cause of action contains the date of the initial illegal, invalid or defective transfer of an interest in real property and such transfer has occurred less than sixty years prior to the commencement of such action. Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action. For the purpose of this section an action shall be deemed to be pending from the time of the recording of such notice; provided such notice shall be of no avail unless service of the process is completed within the time provided by law. This section shall be construed to apply to mechanics' liens

pendens in conjunction with a foreclosure action, contradicts § 49-22 (a). We do not agree. Section 52-325 addresses the proper procedure for the filing of a lis pendens; it does not address the ejectment of tenants. "[I]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Citations omitted; internal quotation marks omitted.) *Moscone* v. *Manson*, 185 Conn. 124, 133–34, 440 A.2d 848 (1981); accord *Charlton Press, Inc.* v. *Sullivan*, 153 Conn. 103, 110, 214 A.2d 354 (1965).

Second, the defendant suggests that § 49-22 (a) makes a distinction between tenants whose lease began before the lis pendens was filed and tenants whose lease began after the lis pendens was filed, and contends that a mortgagee should not be responsible for naming a tenant as a party after the lis pendens was filed. It is apparent, however, that the text of § 49-22 (a) makes no distinction between a tenant who takes possession before the filing of a lis pendens and one who takes possession after the filing of a lis pendens.[19]

and all other inchoate liens, certificates of which are recorded subsequent to the recording of the notice of the pendency of the action; and, in suits to foreclose mortgages or other liens, the persons whose conveyances or encumbrances are subsequently executed or subsequently recorded shall forfeit their rights thereunder, unless they apply to the court in which such action is brought to be made parties thereto, prior to the date when the judgment or decree in such action is rendered."

[19] We find it ironic that the concurring and dissenting opinion, which espouses the plain meaning rule, fails to acknowledge that the *text* of § 49-22 (a) provides no distinction between tenants who take possession of property before the filing of a lis pendens and those who take possession after the filing of a lis pendens.

Additionally, the legislative history of § 52-325 establishes that the legislature chose not to recognize such a distinction. The initial proposal raised by the judiciary committee made the distinction that the defendant urges; however, the committee subsequently rejected that language. The initial proposal suggested amending § 52-325 to provide that, "[a]ny person who, *prior to the recording of a lis pendens*, is in possession of the property . . . ." (Emphasis added.) Raised Committee Bill No. 5826, 1984 Sess. The judiciary committee affirmatively chose not to report this language out to the General Assembly.[20]

The defendant's third contention is that if the mortgagee is required to name a tenant as a party to the foreclosure action, it imposes an unfair burden on the mortgagee, requiring it to verify repeatedly who is occupying the property. We disagree.[21] It is not unduly burdensome to require foreclosing lenders to verify the occupancy of the property. As the court in *Hite* recognized, tenants have a property right in possessing the premises that is subject to constitutional protection. *Hite* v. *Field*, supra, 38 Conn. Sup. 74. A foreclosing mortgagee must, during the foreclosure, be cognizant

---

[20] The concurring and dissenting opinion incorrectly asserts that the legislature's rejection of certain language in the drafting process has no significance with regard to its intent. "The rejection by the Legislature of a specific provision contained in an act . . . is most persuasive to the conclusion that the act should not be construed to include the omitted provision." (Internal quotation marks omitted.) *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 183–84, 550 A.2d 8 (1988).

[21] The concurring and dissenting opinion strains credulity when it suggests that the tenant should "check the land records just once prior to entering into a lease . . . ." As the trial court concluded in *Hite*, "to search the land records . . . would be totally foreign to the average tenant who, in the normal course of events, would have no reason whatsoever to consult the land records. Furthermore, even if the plaintiffs did check the land records, they would not find any reference to themselves with respect to the property in question." *Hite* v. *Field*, supra, 38 Conn. Sup. 78. The average tenant knows nothing of the land records, including how to search them, or of the significance of a notice of lis pendens.

of the constitutional right of tenants in possession of the property. Alternatively, the mortgagee may proceed with a summary process action against the tenant after acquiring title to the property. General Statutes § 47a-26h (a)[22] provides the finality that lenders seek by making the summary process judgment binding on any tenant taking occupancy after service of a valid notice to quit.

Although we have addressed the issue raised by the plaintiff in the present writ of error under the exception to the mootness doctrine for issues capable of repetition yet evading review, this matter is nevertheless moot because the plaintiff has vacated the property. Accordingly, we must dismiss the writ of error as moot.

The writ of error is dismissed.

In this opinion BORDEN, NORCOTT and PALMER, Js., concurred.

ZARELLA, J., concurring in part and dissenting in part. I concur in the majority opinion insofar as it dismisses as moot the writ or error filed by the plaintiff in error, Stephanie Tappin (plaintiff). I respectfully disagree, however, with the conclusions reached in parts I and III of the majority opinion.

---

[22] General Statutes § 47a-26h (a) provides: "A summary process judgment shall bind (1) the named defendants and any minors holding under them; (2) any occupant who first commenced occupancy of the premises after service of the notice to quit upon which the summary process action was based, unless such occupancy was commenced or continued with the consent of the plaintiff or under a right to occupy equal or superior to the rights of the plaintiff; (3) if the plaintiff has properly named and served each occupant whose presence is known with a notice to quit and a writ, summons and complaint in accordance with the provisions of sections 47a-23 and 47a-23a, any occupant who first commenced occupancy of the premises prior to service of the notice to quit and (A) who the plaintiff and his agents did not know was in occupancy of the premises, or (B) of whose presence the plaintiff or his agent knew but whose name they did not know."

The primary issue in this appeal is whether a tenant who enters into a lease after a mortgagee files a lis pendens in the land records can be ejected pursuant to General Statutes § 49-22 (a)[1] without having been joined in the foreclosure action that relates to the lis pendens. In part I of its opinion, the majority concludes that although the doctrine of mootness is implicated by virtue of the plaintiff's act of voluntarily vacating the premises, the facts of the present case fall within the "capable of repetition, yet evading review" exception to that doctrine. I disagree with this conclusion because this case is not in the category of cases in which the challenged action or resulting injury is of an inherently limited duration, a prerequisite that this court heretofore has recognized for purposes of invoking this exception to the mootness doctrine. See, e.g., *Loisel* v. *Rowe*, 233 Conn. 370, 383–84, 660 A.2d 323 (1995).

A situation involving the ejectment of a tenant in possession of property by a foreclosing mortgagee is not of an inherently limited duration as the majority concludes. Indeed, the facts of the present case plainly contradict the majority's conclusion. In the present case, the plaintiff remained in possession of the leased property throughout the duration of the lower court proceedings notwithstanding the mortgagee's attempts to eject her, and would have been in possession at the time of this decision had she not voluntarily vacated the premises. Thus, I would dismiss this appeal as moot on the basis of the plaintiff's act of vacating the premises and would allow "the action [to] be reviewed the next time [the challenged action] arises, when it will present an ongoing live controversy." Id., 384.

The majority further concludes in part III of its opinion that a tenant who enters into a lease after a lis

---

[1] All references to § 49-22 (a) throughout this opinion are to the current revision unless otherwise indicated.

pendens has been filed in the land records in connection with the foreclosure of the property that is being leased, is not a "transferee of a possessory interest in the property who can be ejected under § 49-22 (a) despite not having been made a party to the foreclosure action." General Statutes § 49-22 (a) provides in relevant part: "In any action brought for the foreclosure of a mortgage or lien upon land, or for any equitable relief in relation to land, the plaintiff may, in his complaint, demand possession of the land, and the court may, if it renders judgment in his favor and finds that he is entitled to the possession of the land, issue execution of ejectment, commanding the officer to eject the person or persons in possession of the land and to put in possession thereof the plaintiff or the party to the foreclosure entitled to the possession by the provisions of the decree of said court, provided no execution shall issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens. . . ."

The majority cogently notes that "[t]he language of § 49-22 (a) . . . prohibits the ejectment of any person not a party to the foreclosure unless such person is a 'transferee' or 'lienor' [who is bound by the lis pendens]." I would conclude that the language of § 49-22 (a), when read in light of our precedent,[2] aptly demonstrates that a tenant who enters into a lease subsequent to the filing of a lis pendens is a "transferee" who is bound by the lis pendens and, therefore, can be ejected pursuant to § 49-22 (a) regardless of whether that tenant is joined as a party in the foreclosure action.

---

[2] One of the underpinnings of the plain meaning rule is that litigants, among others, should be able to rely on the clearly stated language of any statute. The plain meaning rule, as well as the mode of statutory analysis adopted in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003), also charges people with knowledge of the holdings in prior decisions in which this court has interpreted a statute.

The execution of a lease of real property clearly qualifies the lessee as a transferee of the interests in such property. E.g., *Monarch Accounting Supplies, Inc.* v. *Prezioso*, 170 Conn. 659, 663–64, 368 A.2d 6 (1976); see also *Jo-Mark Sand & Gravel Co.* v. *Pantanella*, 139 Conn. 598, 601, 96 A.2d 217 (1953) ("A lease transfers an estate in real property to a tenant for a stated period . . . . Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself."). Accordingly, if a tenant enters into a lease after a lis pendens has been filed in the land records, that tenant can be ejected from the property without having been made a party to the foreclosure action. Thus, notwithstanding the majority's conclusion to the contrary, we must refer to General Statutes § 52-325 (a) to determine who is bound by the filing of a lis pendens.

General Statutes § 52-325 (a) provides in relevant part: "In any action in a court of this state or in a court of the United States (1) the plaintiff or his attorney, at the time the action is commenced or afterwards . . . if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens, containing the names of the parties, the nature and object of the action, the court to which it is returnable and the term, session or return day thereof, the date of the process and the description of the property . . . . Such notice shall, from the time of the recording only, be notice to *any person thereafter acquiring any interest in such property* of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and *shall*

*be bound by all proceedings taken after the recording
of such notice,* to the same extent as if he were made
a party to the action. . . ." (Emphasis added.) It is clear
that, because the plaintiff in the present case obtained
her interest in the property subsequent to the mortgag-
ee's filing of the lis pendens, she was bound by the
foreclosure action to the same extent as if she were
made a party thereto. Thus, I would not look, as the
majority does, beyond the plain language of §§ 49-22
(a) and 52-325 (a) in addressing this issue.

Although I do not believe it is appropriate to refer
to legislative history in resolving the primary issue in
this case, the majority's use of it is noteworthy as it
demonstrates the dangers inherent in the approach to
statutory interpretation adopted by this court in *State*
v. *Courchesne,* 262 Conn. 537, 577–78, 816 A.2d 562
(2003). The majority correctly notes that, in 1984, the
legislature amended § 49-22 specifically in response to
the Superior Court decision in *Hite* v. *Field,* 38 Conn.
Sup. 70, 462 A.2d 393 (1982). See Public Acts 1984, No.
84-539 (P.A. 84-539). The majority fails to note, however,
a key factual distinction between *Hite* and the present
case, namely, that the tenants in *Hite* already had
entered into the lease and had taken possession of the
property prior to the filing of the lis pendens. See *Hite*
v. *Field,* supra, 70–71. The court in *Hite* concluded,
inter alia, that the procedure for filing a notice of lis
pendens prescribed by Public Acts 1981, No. 81-8 (P.A.
81-8), violated the tenants' federal and state due process
rights; id., 78; and that, consequently, the defendants
were enjoined from ejecting the tenants pursuant to
General Statutes (Rev. to 1981) § 49-22. Id., 79. The
court in *Hite* emphasized that the tenants "had occupied
the premises continuously for many years prior to the
initiation of the foreclosure proceedings . . . . As
month-to-month tenants, [they] would have [had] to
search the land records continuously in order to learn

of foreclosure actions that could [have] result[ed] in their summary ejectment." (Citation omitted.) Id., 77–78. It is clear, therefore, that the court in *Hite* simply was concerned with whether month-to-month tenants in possession of property *prior* to the filing of a notice of lis pendens were afforded constitutionally adequate notice pursuant to P.A. 81-8.[3] See id., 72–73.

The legislature responded to the decision in *Hite* by enacting P.A. 84-539. Public Act 84-539 deleted from General Statutes (Rev. to 1983) § 49-22 (a) the phrase "unless the person is bound by the judgment by virtue of a lis pendens," which includes a tenant like the tenants in *Hite*, and inserted in its place, "except a transferee or lienor who is bound by the judgment by virtue of a lis pendens," which does not include such a tenant. As the court in *Hite* noted, a month-to-month tenant technically is bound by a lis pendens that is filed after the tenancy initially is established because "the interest of such tenants in the premises expires at the end of each month and, if they remain, their interest is newly obtained at the beginning of the next month." *Hite* v. *Field*, supra, 38 Conn. Sup. 73. Month-to-month tenants are not transferees, however, because, although a month-to-month tenancy creates a new tenancy each month, it does not effectuate a new transfer of the property each month; indeed, the tenant continues in his possession of the property. Thus, the legislature, in substituting the term "transferee" for the original language, rather than eliminating the original language altogether, clearly sought to protect tenants, such as the tenants in *Hite*, who acquire their interests prior to the filing of the lis pendens. The legislature apparently did not deem it necessary to shield from the ejectment process transferees who obtain their interests in property after the filing of the lis pendens.

---

[3] It is worth noting that § 52-325, which the majority concludes is inapplicable in the present case, is entitled "Notice of lis pendens."

Moreover, to require a potential lessee to check the land records just once prior to entering into a lease is a far cry from the situation presented in *Hite*. In *Hite*, the court noted that because the leasehold interest of month-to-month tenants expires at the end of every month and is reacquired at the beginning of the next month; id.; month-to-month tenants would have no choice but to check the land records every month in order to learn of the filing of a lis pendens.[4] Id., 78. Indeed, if the lis pendens had not been filed when the plaintiff in the present case had entered into the lease, § 49-22, as I understand it, would have shielded her from ejectment. As the court in *Hite* stated, "[t]he ejectment procedure is available only against tenants whose interests arise subsequent to the [filing of the] lis pendens." Id., 79. Thus, I would maintain that § 49-22 (a), on its face, seeks to distinguish between the type of tenant in *Hite* and the plaintiff in the present case, especially in view of the inequities that inhere in the ejection of the former type of tenant, as the decision in *Hite* demonstrated. Such inequities were of paramount concern to the legislature when it amended General Statutes (Rev. to 1983) § 49-22 (a) in 1984. See P.A. 84-539.

Nevertheless, even if § 49-22 (a) is interpreted in accordance with *Courchesne*, the comments of legislators made during the floor debates on P.A. 84-539 are inconclusive on the issue of whether the legislature sought to extend protection to tenants other than those that enter into the lease and take possession of the

---

[4] I find it shortsighted for the majority to contend that it is not unduly burdensome to require a mortgagee who files a lis pendens to verify the occupancy of the property continuously after the filing. For example, what if a mortgagee is foreclosing on property occupied by numerous individuals, such as property on which a multiunit apartment complex is situated? The majority would place the burden on the mortgagee to check on a continuous basis possibly hundreds of individual apartment units. I believe that the burden instead should rest with the tenants to check the land records only one time prior to entering into the lease.

property before the filing of the lis pendens, such as the tenants in *Hite*. On the basis of several of these comments, the majority concludes that the legislative history establishes that the legislature chose not to recognize a distinction between tenants whose property interests arise before and after the filing of the lis pendens. Throughout these debates, however, there never was any mention of tenants whose interests arise after the filing of the lis pendens. Rather, as the majority notes, the changes to General Statutes (Rev. to 1983) § 49-22 (a) " 'were intended to strengthen the due process rights of a mortgagor's tenant upon foreclosure in response to [the] Superior Court decision [in *Hite*],' " which, as I have discussed, involved the unique situation of month-to-month tenants whose property interests arose prior to the filing of the lis pendens. The legislative history cited by the majority is, at best, ambiguous as to whether P.A. 84-539 was enacted with the intention of insulating from the ejectment process a tenant whose interest arises after the filing of the lis pendens, or whether P.A. 84-539 was limited to addressing the factual scenario presented in *Hite*. Thus, the legislative history on which the majority relies is insufficient to overcome the plain language of § 49-22 (a). See *State v. Courchesne*, supra, 262 Conn. 574 ("[t]here are cases . . . in which the extratextual sources will indicate a different meaning strongly enough to lead the court to conclude that the legislature intended the language to have that different meaning").

Additionally, an interpretation of the term "transferee" in § 49-22 (a) as including a post lis pendens tenant does not render P.A. 84-539 wholly meaningless as the majority contends. The protection that the legislature sought to afford tenants when it enacted P.A. 84-539 would still exist under the foregoing interpretation as § 49-22 (a) prohibits the ejection of a tenant who enters into the lease before the filing of the lis pendens,

which was the factual scenario presented in *Hite*. Indeed, the interpretation I propose would accomplish the specific goal of the legislation, which is to prevent the party named in the foreclosure action from transferring the property to a third party in order to avoid eviction or ejectment. I am unable to fathom why the majority believes that shielding a post lis pendens lessee from ejectment under § 49-22 (a) is not in direct conflict with the legislature's effort to prevent a dilatory transfer of the property while the foreclosure action is pending.

Finally, I take particular issue with the majority's use of proposals that were made, and rejected, during the legislative drafting process. See text accompanying footnote 20 of the majority opinion. The legislature's rejection of certain language during the drafting process cannot be construed as evidence of the legislature's intent to reject the concept that the language was intended to convey. In fact, it is just as fair to presume that the legislature, in rejecting the language, "[a]ny person who, prior to the recording of a lis pendens, is in possession of the property," contained in Raised Committee Bill No. 5826, 1984 Sess., merely chose different language—the language that currently appears in § 49-22 (a)—to convey the same concept that it intended to convey in the rejected bill. According to the majority's logic, the absence of any change in the lis pendens statute, § 52-325 (a), would imply that post lis pendens tenancies remain "bound by all proceedings taken after the recording of such [lis pendens] . . . ." General Statutes § 52-325 (a).

On the basis of the foregoing, I would conclude that there is no need for the majority to search any further than §§ 49-22 (a) and 52-325 (a) to understand that, under the facts of the present case, the plaintiff is a transferee who is bound by the judgment of foreclosure by virtue of the mortgagee's filing of the lis pendens before the plaintiff had entered into the lease. Even if

§ 49-22 (a) were interpreted in accordance with the principles of statutory interpretation announced in *Courchesne*, this is not a case "in which the extratextual sources . . . indicate a different meaning [from the plain language] strongly enough to lead the court to conclude that the legislature intended the language to have that different meaning." *State* v. *Courchesne*, supra, 262 Conn. 574.

Accordingly, I respectfully concur in part and dissent in part.