******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RETAINED REALTY, INC. *v.* DENISE
E.A. LECOMTE ET AL.
(AC 44515)

Alvord, Elgo and Palmer, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned
by the named defendant, L. Following the trial court's rendering of a
judgment of foreclosure by sale, L filed, with the consent of the plaintiff,
a motion to open the judgment to convert it to a judgment of strict
foreclosure pursuant to certain terms and conditions set forth in a
stipulation filed by the parties with the court. The court granted the
motion to open, approved the stipulation, and rendered a judgment of
strict foreclosure. After the law days had passed without redemption
and title to the property vested in the plaintiff, the plaintiff filed an
application for an execution of ejectment, naming L and her two adult
children as the persons in possession of the property. The court clerk
issued an order rejecting the application on the ground that it included
persons who were not named as parties in the foreclosure action. The
plaintiff filed a motion to reargue the clerk's rejection of its application,
which the court denied, concluding, inter alia, that permitting the
ejectment to proceed against L's adult children would deprive them of
due process. The plaintiff subsequently appealed to this court, claiming
that the trial court erred in denying its motion to reargue the clerk's
rejection of its application for an execution of ejectment. Following oral
argument before this court but before this court rendered its judgment,
the plaintiff obtained from the trial court an execution of ejectment in
this action as to L and an execution of ejectment in an omitted party
action as to L's adult children. This court thereafter ordered supplemen-
tal briefing on the issue of mootness. *Held* that the plaintiff's claim was
moot, and its appeal was dismissed for lack of subject matter jurisdiction:
because, during the pendency of this appeal, the plaintiff obtained the
very relief it requested in its appeal, there was no practical relief that
could be afforded to the plaintiff; moreover, the plaintiff's case did not
fall within the capable of repetition, yet evading review exception to
the mootness doctrine because the challenged action, namely, the trial
court's declining to eject nonparties from the subject property, was not,
by its very nature, of limited duration, as the plaintiff's appeal was
rendered moot not due to the inherently limited duration of the proceed-
ing but due to the plaintiff's actions in pursuing its requested relief
through the alternative avenue of an omitted party action.

Argued February 9—officially released October 11, 2022

*Procedural History*

Action to foreclose a mortgage on certain of the
named defendant's real property, and for other relief,
brought to the Superior Court in the judicial district
of Stamford-Norwalk, where the court, *Randolph, J.*,
rendered a judgment of foreclosure by sale; thereafter,
the court, *Genuario, J.*, granted the named defendant's
motion to open the judgment of foreclosure by sale and
rendered a judgment of strict foreclosure in accordance
with the parties' stipulation; subsequently, the court,
*Spader, J.*, denied the plaintiff's motion to reargue the
court clerk's rejection of its application for an execution
of ejectment, and the plaintiff appealed to this court.
*Appeal dismissed.*

*Taryn D. Martin*, for the appellant (plaintiff).

*John L. Cesaroni*, for the appellee (named defen-

dant).

*Opinion*

ALVORD, J. In this foreclosure action, the plaintiff, Retained Realty, Inc., appeals from the judgment of the trial court denying its motion to reargue the court clerk's rejection of its application for an execution of ejectment, which sought to eject the defendant Denise E.A. LeComte[1] and her adult children, Nichols[2] L. LeComte and Alysia A. LeComte (adult children),[3] both of whom are nonparties to this action. The plaintiff claims on appeal that the court erred in denying its motion to reargue the clerk's rejection of its application for an execution of ejectment. Following oral argument before this court, but before this court rendered its judgment, the plaintiff obtained from the trial court an execution of ejectment in this action, as to the defendant, and an execution of ejectment in an omitted party action, as to the adult children. We ordered the parties to submit supplemental briefs on the issue of mootness. Having reviewed the parties' supplemental briefs, we conclude that the plaintiff's claim is moot, and we dismiss the appeal for lack of subject matter jurisdiction.

The following facts and procedural history are relevant to our resolution of this appeal. The defendant is the borrower on a note and the mortgagor of a mortgage, which documents initially were executed in favor of the lender, Emigrant Mortgage Company, Inc., on property located at 1375 King Street in Greenwich (property). The mortgage and note subsequently were assigned to Emigrant Residential, LLC, formerly known as EMC, L.L.C., which assigned them to the plaintiff.

On June 12, 2017, the plaintiff commenced the present foreclosure action by service of process on the defendant, as the borrower, the defendant's former husband, Jonathan B. LeComte, and Old World Ceramics, Inc., of which the defendant was the agent for service. See footnote 1 of this opinion. The plaintiff filed a second amended complaint in April, 2018, in which it alleged, inter alia, that it was "the holder of the note and mortgage for the installment of principal and interest due on August 1, 2016, and each month thereafter which has not been paid and the plaintiff has exercised the option to declare the entire [amount] due on the note due and payable." The plaintiff alleged that the defendant, her former husband, and Old World Ceramics, Inc., were in possession of the premises.

The plaintiff filed a motion for summary judgment, which was granted by the court, *Genuario, J.*, on November 30, 2018. Thereafter, the plaintiff filed a motion for a judgment of strict foreclosure or, in the alternative, for a judgment of foreclosure by sale. The defendant filed an objection, arguing that there "appear[ed] to be substantial equity" in the property. Thus, the defendant requested that the motion for a judgment of strict foreclosure be denied or, in the alter-

native, that a judgment of foreclosure by sale be rendered. On January 2, 2019, the court, *Randolph, J.*, rendered a judgment of foreclosure by sale, setting a sale date of June 29, 2019.

On May 7, 2019, the defendant filed a motion to open the judgment and extend the sale date until the conclusion of the trial in the defendant's contested marital dissolution proceeding and the issuance of the court's decision in that action. Over the objection of the plaintiff, the court, *Povodator, J.*, granted the defendant's motion and extended the sale date to January 11, 2020.

On January 8, 2020, the defendant filed, with the consent of the plaintiff, a motion to open the judgment, in which she requested that the court open the judgment of foreclosure by sale and "convert [it] to a judgment of strict foreclosure, with a law day of April 7, 2020, pursuant to a stipulation . . . negotiated by the parties to be filed with the court." Also on January 8, the defendant filed with the court the stipulation, which was executed by the defendant[4] and counsel for the plaintiff on the same date.

In the stipulation, the parties requested that the court render a judgment of strict foreclosure on the following terms and conditions: "1. As of the date hereof, the defendant . . . has obtained title, possession and equity of any and all interests that . . . Jonathan B. LeComte has or ever had in and to [the property] by and through a dissolution of marriage judgment . . . . 2. The defendant . . . is in sole possession and title of the property. 3. The parties acknowledge that the original judgment entered a year ago on January 2, 2019, and as of the date hereof, the defendant . . . has been unable to sell the property, refinance the subject mortgage or to reinstate. 4. The plaintiff and the defendant agree that a judgment of strict foreclosure shall enter in the subject action and the first law day shall be April 7, 2020. 5. The defendant agrees to waive her rights to further reopen the foreclosure action and/or judgment of foreclosure and agrees that as of April 8, 2020, the plaintiff shall be entitled to title and possession of the property. 6. The defendant agrees to waive any and all of her rights to appeal or challenge the judgment and agrees that as of April 8, 2020, the plaintiff shall be entitled to title and possession of the property. 7. The defendant shall have through April 7, 2020, to vacate the property, time being of the essence. 8. The defendant agrees that any personal property remaining at the property after midnight on April 7, 2020, is deemed abandoned. 9. The defendant acknowledges that this is a final stay of execution and she cannot request additional time of this court or file and/or request any appellate relief. 10. The defendant shall continue to maintain the property until she vacates, which includes, but is not limited to, being solely responsible for the snow removal, maintenance and utilities. 11. On April 7, 2020,

at midnight, the plaintiff shall be entitled to title and possession of [the property]. 12. Should the defendant not have vacated the property, the plaintiff shall apply for ejectment on April 8, 2020, which shall be granted by the court, without delay. 13. [The] [d]efendant waives any and all rights to seek extension of the ejectment. 14. [The] [d]efendant waives any and all rights of appeal as to the ejectment order(s). 15. Should the defendant not have vacated the premises by April 7, 2020, the [s]tate [m]arshal will execute upon the ejectment upon timely receipt of the ejectment signed by the court. 16. [The] [d]efendant agrees that any and all personal property not removed from the property at the time of the ejectment is deemed abandoned. 17. The defendant states that there are no other persons in possession of the property. Further, the defendant agrees not to allow any other individual to gain possession of the premises from this date forward."

On January 10, 2020, the court, *Genuario, J.*, on the record, granted the "consent motion to open judgment of foreclosure by sale," approved the stipulation, rendered a judgment of strict foreclosure, and set law days to commence on April 7, 2020. Because of the foreclosure moratorium precipitated by the COVID-19 pandemic, the court automatically opened and extended the law days several times until October 6, 2020. The law days passed without redemption, and the plaintiff took title to the property on October 7, 2020.

On December 10, 2020, the plaintiff filed an application for an execution of ejectment, naming the defendant and her two adult children as the persons in possession of the property. That same day, the clerk[5] rejected the application for an execution of ejectment, issuing an order stating: "Motion for ejectment includes parties that are not listed in the action. Plaintiff should file a[n] action in housing."

On December 15, 2020, the plaintiff filed a motion to reargue the clerk's rejection of its application for an execution of ejectment. It represented therein that the defendant had stipulated that she was in sole possession of the property and would vacate the property by midnight on the law day of April 7, 2020, which law day was postponed due to the pandemic until October 6, 2020. In support of its motion, the plaintiff argued that the defendant's two adult children were believed to be residing at the property and were subject to ejectment on the basis, inter alia, that they had no independent right of possession. Specifically, the plaintiff argued that the defendant's adult children are not bona fide tenants under the federal Protecting Tenants at Foreclosure Act of 2009,[6] which provides certain protections to bona fide tenants of foreclosed properties, including protection from immediate ejectment.[7] The plaintiff further argued that the term "person" contained in General Statutes § 49-22 (a),[8] providing that "no execution shall

issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens," does not extend to adult family members of the mortgagor but, rather, includes only tenants.

On January 7, 2021, the defendant filed an objection to the motion to reargue, in which she argued that, because her adult children "were never parties to this action, ejectment is improper, and the plaintiff must commence a summary process action in the housing court." The defendant argued that the term "person" in § 49-22 (a) is not limited to a tenant. In further support of that argument, the defendant cited General Statutes §§ 49-31p and 49-31q, in which the "legislature used the term tenant when it intended to limit [the] provision to tenants." The defendant also relied on the legislative history of § 49-22 (a), as recited in our Supreme Court's decision in *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 757, 830 A.2d 711 (2003). Specifically, the defendant pointed to a statement by Senator Howard T. Owens, Jr., during the introduction of the bill, in 1984, that "it would prohibit ejectment of any person who is in possession of real estate *such as a tenant* unless such person is named as a party to the foreclosure lawsuit." (Emphasis added; internal quotation marks omitted.) Id.

In her objection, the defendant acknowledged that she had agreed in the court-approved stipulation to vacate the property by midnight on April 7, 2020. The defendant argued, however, that the stipulation did not prohibit the court from exercising its discretion not to order ejectment and argued further that her compliance with the stipulation had been rendered impracticable.[9]

The court, *Spader, J.*, heard argument on the plaintiff's motion to reargue the clerk's rejection of its application for an execution of ejectment on January 12, 2021. In its memorandum of decision issued on January 15, 2021, the court denied the plaintiff's motion to reargue. The court prefaced its decision with the concern that, "[a]lthough this has been an issue of constant discussion among clerks seeking guidance on ejectments," there was no controlling appellate authority.

After noting Superior Court cases in which courts had permitted the ejectment of nonparty adult family members, the court stated that the present case involved an additional issue—that the defendant had "proactively advised the court that there were no other adults in possession of the premises nor would she allow any adults to gain possession of the premises." The court stated that it had relied on the representations the defendant made in the stipulation when rendering the judgment.

The court then turned to equitable considerations

with respect to the plaintiff, the defendant, and the nonparty adult children. The court first stated that the plaintiff had alleged that the defendant had not paid the mortgage in four years and that the plaintiff has paid the property taxes and insurance while the defendant resides on the property. The court observed: "Eventually, however, the plaintiff will recover possession of the property and will be able to recoup its investment." The court noted that the plaintiff had named the defendant's former husband and his business as defendants in the foreclosure action on the basis of only their possession of the property and that it could have added all adults in possession at the time of commencement of the action. The court stated that it "ha[d] to consider equity to [the adult children], as well." With respect to the defendant, the court found that she was "in a heightened risk group for COVID-19" and considered her failure to advise the plaintiff and the court that her adult children were still residing on the property.

The court determined that permitting the ejectment to proceed against the defendant's adult children would deprive them of due process, as they are not parties to the action and there is no judgment against them. The court reasoned: "While the adult children may not have independent rights to possession from their mother's rights, they still have due process rights to be heard before the court sends a state marshal to their house to dispossess them. The plaintiff has not made them parties to this case, nor have they, themselves, applied to become parties. They are adults and they are not represented by their mother nor her attorney."

The court then stated: "There also has to be a bright line to protect clerks statewide that are processing ejectments. When persons are included on ejectment applications that are not parties to the action, it should not be the clerk's responsibility to independently guess whether they are children, spouses or parents of the parties to the case—they should only be subject to an ejectment if they are actually named and served parties to the specific case in which the judgment was rendered. This court believes that clerks properly reject ejectments that are not in compliance with this bright-line rule."

The court concluded: "Again, [the defendant's adult children] no longer have a right to possess the premises. They are not bona fide tenants, but this court will not cause their dispossession without due process because it has no jurisdiction to do so. They will have no defense to the cause of action if they are made parties to the foreclosure or if a summary process action is commenced, but they cannot be subject to ejectment until the court is assured that they received due process."[10] (Footnote omitted.) This appeal followed.

On appeal, the plaintiff claims that the court erred in denying its motion to reargue the clerk's rejection

of its application for an execution of ejectment. Specifically, it presents a matter of first impression for the appellate courts of this state—whether § 49-22 (a) offers protection from ejectment to a mortgagor's adult children possessing the property following a judgment of foreclosure and the passing of title, when such adult family members had not been made parties to the foreclosure action.

After filing this appeal, the plaintiff commenced an omitted party action against the defendant's adult children pursuant to General Statutes § 49-30 (omitted party action).[11] See *Retained Realty, Inc.* v. *LeComte*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-21-6050336-S. On December 14, 2021, the court, *Spader, J.*, rendered a judgment of strict foreclosure in the omitted party action, and the court set a law day for the adult children of January 11, 2022. Id. That law day passed. On January 12, 2022, the plaintiff filed in the omitted party action an application for an execution of ejectment, naming the adult children as persons in possession.[12] Id. On January 13, 2022, the adult children filed an objection, arguing that the appeal in the present case had resulted in a stay of execution of the foreclosure judgment, and granting the application for an execution of ejectment in the omitted party action would violate that stay. Id. On January 26, 2022, the plaintiff withdrew its application for an execution of ejectment, and, the next day, the objection thereto also was withdrawn. Id. No appeal was taken in the omitted party action.

On January 28, 2022, the plaintiff filed in the present action a motion for termination of the stay. It argued that the court, in the due administration of justice, should terminate the automatic stay of execution while it prosecutes its appeal, given that the "trial court has now entered separate, final judgments of strict foreclosure where the law days have passed against each of the three individuals who claim possession of the property." The plaintiff further argued that the outcome of the present appeal "has no bearing on whether [the defendant] or her children may retain possession of the property." The defendant filed an objection.[13] On April 1, 2022, the court, *Spader, J.*, granted the motion for termination of the stay, describing it as a request to terminate the stay to issue an ejectment as to the defendant, which "is not contested as to the plaintiff's right to that relief, nor is an issue on appeal." The court ordered that, "to the extent that any stay exists to that specific, nonappealed issue, the stay is properly terminated for the due administration of justice. The court notes that the plaintiff brought a separate action against the nonparties and an ejectment is properly issued in that matter."

On April 11, 2022, the defendant filed with this court a motion for review of the court's order terminating

the stay. The defendant requested that this court reverse the termination order and order that the appellate stay remain in effect for the pendency of this appeal. The plaintiff filed an objection to the motion for review and a motion to expedite this court's ruling on the motion for review. On April 27, 2022, this court issued an order granting review but denying the relief requested and an order stating that no action was necessary with respect to the motion to expedite.

On May 9, 2022, the plaintiff filed, in the omitted party action, an application for an execution of ejectment seeking to eject the adult children. *Retained Realty, Inc.* v. *LeComte*, supra, Superior Court, Docket No. CV-21-6050336-S. On May 17, 2022, the plaintiff filed, in the present action, an application for an execution of ejectment seeking to eject the defendant.[14] The clerk granted both applications on May 27, 2022, and issued both executions of ejectment that same day. See id.

Following the issuance of both executions of ejectment, this court, sua sponte, ordered the parties to file memoranda "giving reasons, if any, why the appeal should not be dismissed as moot in light of the issuance of the execution of ejectment as it does not appear that there is any practical relief that can be given to the appellant in this case." On August 15, 2022, the parties filed their supplemental memoranda. The defendant submits that the appeal should be dismissed as moot, while the plaintiff urges this court to consider the merits of the appeal because its claim satisfies the "capable of repetition, yet evading review" exception to the mootness doctrine.

With these facts and procedural history in mind, we turn to whether the plaintiff's claim is reviewable by this court. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) *Renaissance Management Co.* v. *Barnes*, 175 Conn. App. 681, 685–86, 168 A.3d 530 (2017). "In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Wendy V.* v. *Santiago*, 319 Conn.

540, 545, 125 A.3d 983 (2015).

In the present case, the plaintiff, in its appellate brief, requested as relief that this court "reverse the trial court's decision denying the application for ejectment and remand the matter with orders to approve the application for ejectment with no additional stays to enter in accordance with the stipulation/judgment." During the pendency of this appeal, the plaintiff was afforded that relief, in that the applications for executions of ejectment were granted, and the executions of ejectment were issued. Thus, no practical relief can be afforded to the plaintiff.

We note, however, that "an otherwise moot question may qualify for review under the capable of repetition, yet evading review exception. To do so . . . it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, [the appeal] must be dismissed as moot." (Internal quotation marks omitted.) *Brookstone Homes, LLC* v. *Merco Holdings, LLC*, 208 Conn. App. 789, 800–801, 266 A.3d 921 (2021).

"The first requirement of the foregoing test reflects the functionally insurmountable time constraints present in certain types of disputes. . . . Paradigmatic examples are abortion cases and other medical treatment disputes. . . . The basis for the first requirement derives from the nature of the exception. If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced. Thus, there is no reason to reach out to decide the issue as between parties who, by hypothesis, no longer have any present interest in the outcome." (Citation omitted; internal quotation marks omitted.) *Wendy V.* v. *Santiago*, supra, 319 Conn. 546; see also *Ruffin* v. *Commissioner of Correction*, 89 Conn. App. 724, 728, 874 A.2d 857 (2005) ("the evading review concept implicates the notion of time and its likely effect on a court's ability to review an action or claim" (internal quotation marks omitted)).

We conclude that this case does not meet the first requirement under the capable of repetition, yet evading

review exception, in that the action is not of inherently limited duration. The plaintiff is challenging the court's denial of its motion to reargue the clerk's rejection of its application for an execution of ejectment because, in that application, it sought to eject nonparties to the foreclosure. The challenged action, namely, the court's declining to eject nonparties from the property, is not, by its very nature, of limited duration. See *Wendy V.* v. *Santiago*, supra, 319 Conn. 546–47. This case would not have become moot before appellate litigation could have concluded had the plaintiff not availed itself of the alternative avenue of an omitted party action, through which it ultimately obtained the relief it sought in this appeal.[15] Thus, the plaintiff's appeal was rendered moot not due to the "inherently limited duration" of the proceeding but due to the plaintiff's actions in pursuing its requested relief through the alternative avenue of an omitted party action. See *Brookstone Homes, LLC* v. *Merco Holdings, LLC*, supra, 208 Conn. App. 802 ("appeal was rendered moot not due to the 'inherently limited duration' of the proceeding before the trial court but due to [the] failure [of the appellants] to seek the appropriate remedy from this court").

In sum, this case involves no functionally insurmountable time constraints. Rather, it presents a challenge to an "action [that] can be reviewed the next time it arises, when it will present an ongoing live controversy." *Loisel* v. *Rowe*, 233 Conn. 370, 384, 660 A.2d 323 (1995). Accordingly, this case does not fall within the capable of repetition, yet evading review exception to the mootness doctrine.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The plaintiff also named as defendants Jonathan B. LeComte, the former husband of Denise E.A. LeComte, who filed an answer and disclosure of no defense, and Old World Ceramics, Inc., which was alleged to be in possession of the property and subsequently was defaulted for failure to appear. Neither Jonathan B. LeComte nor Old World Ceramics, Inc., is participating in this appeal. We therefore refer to Denise E.A. LeComte as the defendant.

[2] We note that Nichols is spelled differently throughout the record.

[3] See footnote 13 of this opinion.

[4] The defendant has been represented by counsel at all relevant times, including at the time the stipulation was executed by the defendant and filed with the court.

[5] Pursuant to General Statutes § 51-52 (a), "[c]lerks shall . . . issue executions on judgments . . . ."

[6] See Title VII of the Helping Families Save Their Homes Act of 2009, known as the Protecting Tenants at Foreclosure Act of 2009, Pub. L. No. 111-22, § 702, 123 Stat. 1632, 1660–61.

[7] Connecticut has enacted a similar statutory provision, General Statutes § 49-31p, which provides in relevant part: "(a) In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property that has a return date on or after July 13, 2011, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to (1) the provision, by such successor in interest, of a notice to vacate to any bona fide tenant not less than ninety days before the effective date of such notice; and (2) the rights of any bona fide tenant, as of the date absolute title vests in such successor in interest (A) under any bona fide lease entered into before such date to occupy the premises until the end of the remaining term of the lease . . . .

"(b) For purposes of this section, a lease or tenancy shall be considered bona fide only if (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant, (2) the lease or tenancy was the result of an arms-length transaction, and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a federal, state or local subsidy. . . ."

[8] General Statutes § 49-22 (a) provides: "In any action brought for the foreclosure of a mortgage or lien upon land, or for any equitable relief in relation to land, the plaintiff may, in his complaint, demand possession of the land, and the court may, if it renders judgment in his favor and finds that he is entitled to the possession of the land, issue execution of ejectment, commanding the officer to eject the person or persons in possession of the land no fewer than five business days after the date of service of such execution and to put in possession thereof the plaintiff or the party to the foreclosure entitled to the possession by the provisions of the decree of said court, provided no execution shall issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens. The officer shall eject the person or persons in possession and may remove such person's possessions and personal effects and deliver such possessions and effects to the place of storage designated by the chief executive officer of the town for such purposes."

[9] Specifically, the defendant argued: "While the stipulation provided that [the defendant] would vacate the property as of April 8, 2020 (the day after the law day), events since the entry of the stipulation have made compliance impracticable. [The defendant] is sixty-six (66) years old. Older adults like her are at a greater risk of dying or being hospitalized. . . . In addition, [the defendant] suffers from heart disease, which increases the risk of severe illness from COVID-19 in people of any age. . . . Thus, moving in compliance with the stipulation, which could expose [the defendant] to greater risk of contracting COVID-19, was impracticable under the circumstances. In addition, while she has attempted to find a rental property, this has become difficult, in part, because of the skyrocketing rental market in Fairfield County." (Citations omitted.)

[10] The court noted that, pursuant to Governor Ned Lamont's Executive Order No. 9T issued on December 23, 2020, the plaintiff was prohibited, at that time, from commencing a summary process action on or before February 9, 2021.

[11] General Statutes § 49-30 provides: "When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title."

[12] Also on January 12, 2022, the plaintiff filed, in the present action, a second application for an execution of ejectment, naming only the defendant as the person in possession. On January 13, 2022, the defendant filed an objection thereto, arguing that the automatic appellate stay applies to prevent execution on the judgment. On January 26, 2022, the plaintiff withdrew the second application for an execution of ejectment and, the next day, the defendant withdrew her objection thereto.

[13] In her objection to the motion for termination of the stay, the defendant represented that her adult child Alysia A. LeComte was no longer residing at the property.

[14] The plaintiff previously had filed, also in the present action, an application for an execution of ejectment on May 9, 2022. The clerk rejected that application on the basis that it failed to list all dates of judgment.

[15] The plaintiff argues in its supplemental brief that "[t]he question of whether the intended interpretation of the term 'person' in . . . § 49-22 (a) encompasses a mortgagor's family members and whether those family members are subject to ejectment without having been named as parties to the foreclosure action is an issue that is capable of repetition yet evading

judicial review. It is not likely this question, or the ejectment itself will ever reach appellate review before becoming moot due to the pursuit of alternate avenues such as summary process or like here, an omitted party action concludes before [a] decision is rendered on appeal. While an appeal on an ejectment is pending, like here an omitted party action can proceed, or even a summary process action could be instituted. Given the length and cost of an appeal, a mortgagee will more likely than not attempt another avenue altogether or while an appeal is pending."

We disagree with the plaintiff. The availability of alternative avenues, and the plaintiff's decision to take advantage of one such avenue, does not assist with the conclusion that the challenged action is of limited duration. This case became moot only because the plaintiff chose a separate course of action to pursue and obtained the executions of ejectment it sought.

_____